ROGER BOURQUE *v.* MAXWELL MORRIS
(11105)

PETERS, HEALEY, PARSKEY, SHEA and GRILLO, Js.

Argued April 8—decision released June 14, 1983

*William H. Hescock,* for the appellant (plaintiff).

*Morris H. Globerman,* for the appellee (defendant).

SHEA, J. The plaintiff brought this action for forcible entry and detainer pursuant to General Statutes § 47a-43 after he was locked out of the room he occupied in a hotel owned by the defendant. After a trial to the court judgment was rendered for the defendant and the plaintiff has appealed. Error is claimed in two conclusions of the court: (1) that the plaintiff was obliged to prove that he had been dispossessed of his room by force and "strong hand" in order to establish a cause of action under the statute; and (2) that the

arrangement between the plaintiff and the defendant concerning the room constituted "transient occupancy in a hotel or motel or similar lodging" and was, therefore, exempt from the application of § 47a-43. We disagree with the first conclusion of the trial court, but decide that the second conclusion was reasonably drawn from the evidence. Since the second conclusion alone adequately supports the judgment, we find no error.

The subordinate facts found by the trial court have not been challenged. On August 8, 1980, the defendant began his occupancy of a room in the Wauregan Hotel in Norwich, a licensed hotel owned and operated by the defendant. The room was twelve by fifteen feet in area and it contained a bed and a sink, but no toilet, bathing or cooking facilities. Toilet facilities used in common with other hotel occupants were available in the hall outside the plaintiff's room. The city of Norwich paid the weekly rental charge for the room of thirty-five dollars per week because the plaintiff was a welfare recipient. These payments continued during August, September and October and then ceased.

On November 18, 1980, when the plaintiff was two weeks in arrears on his rent, he returned to his room but found that his key would no longer open the door. The plaintiff complained to an employee of the defendant but was told that nothing could be done. Another employee, the maintenance man, found a key to open the door of the room, and the plaintiff was allowed to enter and to remove his possessions. The trial court found that this employee had changed the lock on the door as an agent for the defendant acting within the scope of his employment responsibility. During the period of his occupancy the plaintiff had no place of residence other than his room at the hotel.

Subsection (4) of General Statutes § 47a-43 (a)[1] provides that "when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the superior court." The plaintiff relied wholly upon this subsection as the basis for his action. Unlike subsections (1) and (2) of § 47a-43 (a), subsection (4) contains no specification or implication that force and a "strong hand" must be used as the means of entering or detaining the premises. See *Hartford Realization Co.* v. *Travelers Ins. Co.,* 117 Conn. 218, 224–25, 167 A.2d 728 (1933); *Gray* v. *Finch,* 23 Conn. 495, 515 (1855). It requires a finding only that possession could not be regained without causing damage to the premises or committing a breach of the peace. The conclusion of

---

[1] "[General Statutes] Sec. 47a-43. (Formerly Sec. 52-462.) COMPLAINT AND PROCEDURE: FORCIBLE ENTRY AND DETAINER; ENTRY AND DETAINER. (a) When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the superior court.

"(b) Such judge shall forthwith issue a summons to the party complained of, directed to some proper officer, to notify him to appear at a specified time and place, within eight days from the exhibition of such complaint, in the superior court for the judicial district wherein the injury complained of was done, to answer to the matters contained in the complaint.

"(c) Such summons shall be served upon the party complained of six days inclusive before the day appointed for trial.

"(d) If, after service of such summons, the party complained of does not appear and defend, The judge shall proceed in the same manner as if he were present."

the trial court, which effectively read the force and "strong hand" requirement of subsections (1) and (2) into subsection (4), was clearly erroneous.

We agree with the trial court, however, that the plaintiff is not entitled to invoke § 47a-43 because the finding that he was a transient occupant of the hotel is adequately supported by the evidence, and, therefore, the exemption of General Statutes § 47a-2[2] is applicable. Section 47a-2 provides that one of the "arrangements" exempted from the operation of § 47a-43 is "transient occupancy in a hotel or motel or similar lodging." It is undisputed that the room of the plaintiff was situated in a licensed hotel. He claims, however, that his was not a transient occupancy because of its duration of more than three months and because he had no other home. A "transient" is "[a] person passing through a place or staying there only temporarily." Ballentine's Law Dictionary (3d Ed. 1969). To be a guest of an inn or hotel it is essential that the person should be a transient, that is, that he should come to the inn for a more or less temporary stay, for if he comes on a permanent basis he will be deemed a boarder or lodger rather than a guest. 43A C.J.S., Inns, Hotels and Eating Places § 5, p. 794; see *Walling* v.

---

[2] "[General Statutes] Sec. 47a-2. ARRANGEMENTS EXEMPTED FROM APPLICATION OF THIS TITLE. Unless created to avoid the application of this chapter and sections 47a-21, 47a-23 to 47a-23b, inclusive, 47a-26 to 47a-26g, inclusive, 47a-35 to 47a-35b, inclusive, 47a-41a, 47a-43 and 47a-46, the following arrangements are not governed by this chapter and sections 47a-21, 47a-23 to 47a-23b, inclusive, 47a-26 to 47a-26g, inclusive, 47a-35 to 47a-35b, inclusive, 47a-41a, 47a-43 and 47a-46: (1) Residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling; religious service or any similar service; (2) occupancy under a contract of sale of a dwelling unit or the property of which such unit is a part, if the occupant is the purchaser or a person who succeeds to his interest; (3) occupancy by a member of a fraternal or social organization in the portion of a structure operated for the benefit of such organization; (4) transient occupancy in a hotel or motel or similar lodging; and (5) occupancy by an owner of a condominiun unit."

*Potter*, 35 Conn. 183, 185 (1868). "The length of stay, the existence of a special contract for the room, the fact that a person has another abode and the extent to which he has made the room his home for the time being are material circumstances in determining whether the relationship is that of a guest or a lodger." *State* v. *Anonymous (1977-7)*, 34 Conn. Sup. 603, 605, 379 A.2d 1 (1977); 43A C.J.S., supra, p. 795.

The defendant had the burden of proving that his arrangement with the plaintiff was for transient occupancy, as pleaded in his special defense. *Perley* v. *Glastonbury Bank & Trust Co.*, 170 Conn. 691, 698, 368 A.2d 149 (1976); see *DuBose* v. *Carabetta*, 161 Conn. 254, 262, 287 A.2d 357 (1971). Since the statute refers to "transient occupancy" as one of the "arrangements" excepted from the operation of the landlord-tenant statutes, any unilateral intention on the part of the plaintiff to remain at the hotel indefinitely or to make it his home, of which the defendant had no reasonable notice, would not be determinative in ascertaining what contractual arrangement existed between the parties. The issue must be decided upon the basis of reasonable inferences to be drawn from the circumstances of the transaction between them. *Hess* v. *Dumouchel Paper Co.*, 154 Conn. 343, 347, 225 A.2d 797 (1966); *Lindsay* v. *Phillips*, 95 Conn. 96, 100, 111 A. 176 (1920); 43A C.J.S., supra, pp. 796-98.

One significant factor in this case is that the defendant was operating a licensed hotel, as the plaintiff must have realized when he moved there. *Buck* v. *Del City Apartments, Inc.*, 431 P.2d 360, 363 (Okla. 1967). It appears from the evidence that no special arrangement was made in relation to his occupancy as distinguished from that of other hotel guests. The plaintiff was required to sign a hotel registration card like that ordinarily signed by a hotel guest. The defendant could

reasonably have assumed that his arrangement with the plaintiff was for transient occupancy, like that with his other guests, in the absence of some reason to believe to the contrary. The fact that the rent was paid weekly does not compel a different conclusion. It appears that the city of Norwich made the arrangements for occupancy of the room by the plaintiff. There was no evidence that the parties could reasonably expect that the city would pay for the room indefinitely. The three month duration of the plaintiff's occupancy of the room was not so extended that the trial court was obliged to view it as "permanent." In conjunction with the brief period of occupancy and the operation of the premises as a licensed hotel, the rudimentary nature of the accommodations furnished, without cooking, bathing or toilet facilities in the room, is some indication that only a temporary living arrangement was intended. There was sufficient evidence to support the finding of the trial court under the applicable standard of proof,[3] a fair preponderance of the evidence, that the arrangement between the parties was for transient occupancy of the hotel room.

The plaintiff also argues that he falls within the statutory definition of a "roomer" in General Statutes

---

[3] In *State* v. *Anonymous (1977-7)*, 34 Conn. Sup. 603, 379 A.2d 1 (1977), the Appellate Session of the Superior Court held that there was insufficient evidence to satisfy the standard of proof beyond a reasonable doubt applicable to criminal cases where the defendant had been convicted of larceny by theft of services in violation of General Statutes § 53a-119 (7). The charge was that the defendant had, "with intent to avoid payment . . . for services rendered to him as a transient guest at a . . . motel" avoided such payment by unjustifiable failure or refusal to pay. General Statutes § 53a-119 (7) (1). That case is distinguishable not only because of the different standards of proof involved, but also because "[t]he rental arrangement and the nature of the accomodations differed from those pertaining to the regular motel rooms." Id., 606.

§ 47a-1 (j)[4] and, therefore, should not have been found to be a transient occupant. The purpose of the exemption for transient occupancy was, of course, to exclude persons in that status from the operation of the landlord-tenant statutes which would otherwise apply. Nothing in the definition of "roomer" under § 47a-1 (j), precludes a person who qualifies as a "roomer" from being found also to be a transient occupant where the circumstances so indicate.

There is no error.

In this opinion the other judges concurred.

---

[4] General Statutes § 47a-1 (j) provides as follows: " 'Roomer' means a person occupying a dwelling unit, which unit does not include a refrigerator, stove, kitchen sink, toilet and shower or bathtub and one or more of these facilities are used in common by other occupants in the structure."

Dwelling unit is defined in subparagraph (c) of this statute as follows: " 'Dwelling unit' means any house or building, or portion thereof, which is rented, leased or hired out to be occupied, or is occupied as a home or residence of one or more persons."