[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action in seven counts brought by a former tenant against his former landlord. The first and second counts allege an entry and detainer as defined in General Statutes §§ 47a-43(2), (3), and (4).[1] The remaining counts assert actions for unlawful entry in violation of General Statutes § 47a-16[2]; theft/conversion pursuant to General statutes § 52-564[3]
unfair trade practice, pursuant to General Statutes § 42-110a,et seq[4]; intentional infliction of emotional distress; and negligent infliction of emotional distress.
Defendant landlord has appeared pro se and has denied the material allegations of the complaint[5]. He has also counterclaimed seeking damages for back rent, storage fees, and counseling fees. The plaintiff has denied the allegations of the counterclaim.
At trial, only the plaintiff and the defendant testified. With the exception of a phone conversation between them, there is little dispute as to the germane facts.
 FINDINGS OF FACT
The defendant, Paul Kalinowski (hereinafter sometimes "Kalinowski"), is Director of Hillside Acres, a non-profit organization, which provides residential and vocational services to persons with disabilities, including persons with Traumatic Brain Injury (TBI). The plaintiff, Raymond Forbotnick (hereinafter CT Page 469 sometimes "Forbotnick"), sustained TBI probably as a result of a near-drowning incident when he was five years old.
In December 1996, the plaintiff; who had been living out of his car after having recently been discharged from Gaylord Hospital Transitional Living Center, entered into a written Lease Agreement with Hillside Acres Residential Services for premises located at 185 Laurel Street, Apartment 4A, Bristol, Connecticut at a monthly rental rate of $504.00. The Lease Agreement was signed by Forbotnick as "Tenant" and Kalinowski as "Director". Under the terms of the Lease Agreement, Hillside staff would assist the tenant with "Organizational Skills for apartment living, Transportation, Vocational Opportunities, and Appointments" one day each week. Forbotnick agreed not to drink alcohol and to notify the Hillside Acres office if he was unable to participate in his scheduled day for assistance. The Lease Agreement also contained the following statement: "I agree to abide by the above rules or I will be discharged from Hillside Acres Residential Program."
Forbotnick paid the defendant an initial deposit of $250 and moved into the apartment. When he moved into the premises, Forbotnick was not receiving Title XIX benefits because he had been living out of his car and did not have an established residence. It was understood that he would pay the rent of $504 when he received Title XIX benefits. The defendant assisted Forbotnick in completing an application and paperwork for Title XIX benefits. When Forbotnick moved into the Laurel Street apartment he was receiving therapy at The Counseling Center of Bristol.
Forbotnick moved all of his belongings either into the apartment or onto the premises and started living there in early December 1996. With the exception of appliances and a sofa provided by the landlord, the plaintiff fully furnished the three room apartment with his belongings, many of which had been stored at an aunt's house in Bristol.
Until February 25, 1997, Forbotnick lived in the leased premises, occasionally being absent for a day or two. On February 25, 1997, on an impulse, the plaintiff and a fiend drove to Florida in the plaintiff's car. The car had been in a garage for repairs and that was the day he picked it up. He took only clothing with him. He did not tell anyone he was going to Florida, but a few days after he left, he called his mother who CT Page 470 lives in Bristol.
Forbotnick had planned to be away for two weeks, but his return was delayed because he was in a car accident and his car required repairs. On March 20, 1997, the plaintiff called Kalinowski and told him about the trip to Florida, that there had been a car accident, and that the return to Connecticut would be delayed. Forbotnick also told Kalinowski that he had been denied Title XIX benefits. Kalinowski told the plaintiff they would discuss it when he returned.[6]
The plaintiff returned to the apartment at 185 Laurel Street on April 16, 1997. He was unable to enter the front or back door. He was able to see some of his furnishings inside the apartment and he saw a bunch of his "stuff" in a garbage bin. He was very upset and went to the police station where he filed a report. The police called Kalinowski at 2 am and arrangements were made for the plaintiff to pick up his possessions in Wolcott. Kalinowski told the police officer that he had assumed that Forbotnick had abandoned the apartment.
That night Forbotnick stayed with a friend. On April 23, 1997, a Wolcott police officer accompanied him when he went to pick up his possessions. Forbotnick never recovered all of his possessions, never recovered his mail, and never received any communication from Kalinowski.
Forbotnick was subsequently admitted to the Bristol Hospital Psychiatric Ward for treatment for two weeks and then received counseling at The Counseling Center of Bristol Hospital. He stayed at the homes of friends for a long time. He had to take sleeping pills and medications for headaches because of stress. While he was a patient at Gaylord in 1996, Forbotnick's prescriptions included medications for seizures, for anxiety and depression, and for sleep. Those medications were discontinued when he went to Florida on February of 1997. At the time of trial, he was taking only a sleep medication. Today, he finds it difficult to trust anyone.
Kalinowski entered the apartment on April 14, 1997. Kalinowski assumed that the tenant had picked up and relocated. Rather than putting Forbotnick's furnishings into storage and spending more money, Kalinowski instructed an agent to put the property in a trailer in Wolcott, Connecticut, and to leave what was in the basement storage. He secured the windows and changed the locks. CT Page 471 On April 16, 1997, Kalinowski received a phone call around 2 am from the Bristol police inquiring about Forbotnick's possessions. He told the police that Forbotnick's belongings were in a trailer in Wolcott. Kalinowski also told the police that he had assumed that Forbotnick had abandoned the apartment.
Forbotnick went to the trailer accompanied by a member of the Wolcott Police Department to retrieve his possessions on April 23, 1997 and he returned to the Bristol apartment to retrieve his belongings from the basement storage. Kalinowski did not incur any expenses for storage.
 FIST COUNT AND SECOND COUNTS: ENTRY AND DETAINER
"The right of action for forcible entry and detainer is a creature of statute." Communiter Break Co. v. Scinto,196 Conn. 390, 392, (1985). "A plaintiff suing under the forcible entry and detainer statute must prove his actual possession of the land or property from which he claims to have been dispossessed." (Emphasis omitted.) Id. 393.
Beyond the element of actual possession, General Statutes §47a-43 requires certain action on the part of the defendant, although not necessarily violent action. Bourque v. Morris,190 Conn. 364, 367 (1983). General Statutes 47a-43 affords redress when "any person enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor" or "when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession."
The defendant's changing the locks of the apartment leased to the plaintiff and the defendant's removal and retention of the plaintiffs belongings is conduct which clearly falls within the ambit of the statute.
In his answer, by way of defense and/or justification, the defendant claims that 1) General Statutes 47a-43 was not violated "due to the nature of service Mr. Forbotnick contracted from Hillside Acres, Inc. residential and vocational services for the disabled." He also claims that he was entitled to dispossess the defendant because "Mr. Forbotnick could have continued his residential services with another contract and payment of back rent." and because he "violated the rules of the residential CT Page 472 lease."
Defendant's claim that his conduct is beyond the reach of the summary process statutes and the entry and detainer statutes because Hillside Acres provided residential and vocational services for the disabled calls into play General Statutes §47a-2[7] which sets forth the living arrangements exempted from summary process and entry and detainer.
 Unless created to avoid the application of this chapter and sections 47a-21, 47a-23 to 47a-23b, inclusive, 47a-26 to 47a-26g, inclusive, 47a-35 to 47a-35b, inclusive, 47a-41a, 47a-43 and 47a-46, the following arrangements are not governed by this chapter and sections 47a-21, 47a-23 to 47a-23b, inclusive, 47a-26 to 47a-26g, inclusive, 47a-35 to 47a-35b, inclusive, 47a-41a ,47a-43 and 47a-46: (1) Residence at an institution, public or private, if incidental to detention or the provision of medical geriatric, educational, counseling, religious service or any similar service; (2) occupancy under a contract of sale of a dwelling unit or the property of which such unit is a part, if the occupant is the purchaser or a person who succeeds to his interest; (3) occupancy by a member of a fraternal or social organization in the portion of a structure operated for the benefit of such organization; (4) transient occupancy in a hotel or motel or similar lodging; (5) occupancy by an owner of a condominium unit; and (6) occupancy by a personal care assistant or other person who is employed by a person with a disability to assist and support such disabled person with daily living activities or housekeeping chores and is provided dwelling space in the personal residence of such disabled person as a benefit or condition of such employment.
Although neither party has specifically raised or addressed that statute, it is incumbent on the court to assess its impact on the claims in this case. See Stoni v. Wasicki, 179 Conn. 372, 377
(1979) (trial court's failure to apply a pertinent statute is plain error even though neither party raised the issue either at trial or before the Supreme Court.)
"The summary process statute being in derogation of the common law must be strictly followed and narrowly construed. WindsorProperties, Inc. v. Great Atlantic Pacific Tea Co.,35 Conn. Sup. 297, 301, (1979). The introductory language of Section 47a-2
CT Page 473 makes clear that certain specified arrangements are exempt from application of statutes governing summary process and entry and detainer "unless created to avoid the[ir] application." That language mandates close scrutiny of arrangements that might be exempted and reinforces the dictate to narrowly construe its terms.
In Bourque v. Morris, 190 Conn. 364 (1983), the Court set forth factors for the trial court to consider in determining if an arrangement falls under the exceptions of § 47a-2(a). "The issue must be decided upon the basis of reasonable inferences to be drawn from the circumstances of the transaction between them." Id. at 369.[8]
With those considerations in mind, this court concludes that General Statutes 47a-2 does not shield the defendant from application of the summary process statutes or the entry and detainer statutes. The only possible section applicable in the circumstances of this case is Section 47a-2a(1) which exempts "Residence at an institution, public or private, if incidental to detention or the provision of medical, geriatric, educational, counseling, religious service or any similar service." The defendant has the burden of proving that his arrangement with the plaintiff enjoyed exemption under General Statutes 47a-2.. Perleyv. Glastonbury Bank Trust Co., 170 Conn. 691, 698 (1976); seeDuBose v. Carabetta, 161 Conn. 254, 262 (1971). He did not sustain that burden.
There is nothing about the Lease Agreement or arrangement between the parties which can even remotely be characterized as "residence at an institution." The plaintiff rented an apartment in a building. He could come and go as he pleased. He agreed to pay rent for the apartment. The only requirement for his continued participation in the Hillside Acres Residential Program was that he notify the staff if he was unable to attend his scheduled day of assistance and that he not drink alcohol because of his medications and brain injury. There was no evidence that his residence was incidental to detention or to the provision of medical, geriatric, educational, counseling, religious service or any similar service. Forbotnick enjoyed complete independence; his residence was certainly not incidental to detention. Nor do I find that Forbotnick's residence at 185 Laurel Street, Apt 4A, was "incidental" to medical, geriatric, educational, counseling, religious service or any similar service. The defendant presented no evidence that the building which housed Forbotnick's apartment CT Page 474 was a licensed facility or that the staff at Hillside Acres were licensed providers of specialized services to the disabled. Under the circumstances, providing assistance with appointments, vocational opportunities, transportation, and organization skills for apartment living is not "similar service" to those enumerated in the statute. Moreover, providing such service one day each week, service which Forbotnick was not obliged to accept, did not convert his seven day a week residence into an "incidental" one.
The defendant also predicates a defense on the claim that he is exempt from sanctions under 47a-43 et seq. because the plaintiff had abandoned the premises. The plaintiff argues that abandonment is statutorily defined in 47a-11b[9] and that the circumstances of this case do not come within the purview of that definition.
 (a) For the purposes of this section, "abandonment" means the occupants have vacated the premises without notice to the landlord and do not intend to return, which intention may be evidenced by the removal by the occupants or their agent of substantially all of their possessions and personal effects from the premises and either (1) nonpayment of rent for more than two months or (2) an express statement by the occupants that they do not intend to occupy the premises after a specified date. Emphasis supplied.
General Statutes 47a-11b also sets forth the procedures a landlord must follow to regain possession of premises in the event the tenant has in fact abandoned and given up possession. Where the premises are abandoned, as defined in the statute, and where the landlord follows the statutory procedures, he may take back possession without recourse to the summary process statutes and without risking exposure to a claim of entry and detainer. No action shall be brought under section 47a-43 against a landlord who takes action in compliance with the provisions of this section." General Statutes 47a-11b(e).
The defendant has the burden of proving abandonment. Davis v.Gleeson, 5 Conn. Sup. 325 (1937). General Statutes 47a-11b(e) provides no shield. The test for determining abandonment under the statutory definition cannot be met. Nor for that matter can the defendant prove abandonment under the common law. Our Supreme Court has long held that abandonment implies a voluntary and intentional relinquishment of a known right. Cummings v. Tripp,204 Conn. 67, 93 (1987); Bianco v. Darien, 157 Conn. 548, 556
(1969). Daddona V. Liberty Mobile Home Sales, Inc., 209 Conn. 243
(1988). Compare Gnandt v. DaCruz, 1994 Ct. Sup. 4702 (1994). The CT Page 475 overwhelming evidence indicates that Forbotnick did not intend to relinquish his right to possession. There was no basis for Kalinowski to think otherwise. Substantially all of Forbotnick's possessions and personal effects had been left in the apartment. Moreover, even if Kalinowski assumed, as he stated to the police, that Forbotnick had abandoned the property, the defendant took not one step to comply with the statutory procedures set forth in General Saatutes 47a-11b such as sending statutory notices pursuant to section 47a-11b(b) or preparing an inventory of the property removed by him from the premises pursuant to section47a-11b(d).
 The lesson to be learned from this case is that where the landlord acts to dispossess a tenant without the benefit of summary proceedings and without actually knowing that the tenant has abandoned the premises, he acts imprudently. If he acts precipitously, as the defendant did in this case, he acts at his peril unless an abandonment has in fact taken place before dispossession. . . . 47a-11b rewards prudence and importunes against such risks as the defendant took. Gnandt V. Dacruz, supra, 4707-08.
I find that the plaintiff has proven his claim under Count One alleging Entry and Detainer. The plaintiffs original possession of the premises was rightful, the only proper mode of eviction available to the defendant was that of summary process, (2) the plaintiff had not abandoned the premises, (3) Kalinowski violated General Statutes 47a-43 when he Changed the locks and removed Forbotnick's personal property.
 SECOND COUNT: ENTRY AND DETAINER DAMAGES
In the second count of his complaint the plaintiff seeks double damages pursuant to General Statutes 47-46. "It is axiomatic that a claimant seeking damages bears the burden of proving, with reasonable certainty, those damages sustained as a result of his injury. Fox v. Mason, 189 Conn. 484, 488 (1983); Pacelli Bros.Transportation, Inc. v. Pacelli, 189 Conn. 401, 410 (1983); Johnsonv. Flammia, 169 Conn. 491, 500 (1975)." Conaway v. Prestia, Page
605 191 Conn. 484, 493-94 (1983). The defendant claims that the plaintiffs possessions and their values could not be substantiated by anyone other than himself. The owner of property is competent to testify to its value. Shane v. Tabor,5 Conn. App. 363 (1985). "Mere difficulty in the assessment of damages is not a sufficient reason for refusing them where the right to them has been established." Grant v. West Haven Gardens Co., CT Page 476181 Conn. 379, 388 (1980), citing Crowell v. Palmer, 134 Conn. 502, 511
(1948).
While the plaintiff was in Florida, the defendant, with the assistance of others, removed all of the personal property of the plaintiff, including furniture, tools, collectibles, and clothes. Some of the property was thrown into a trash bin and most was placed in a trailer off premises in Wolcott. Some property was not recovered.
Upon his return from Florida, Forbotnick found himself locked out of his dwelling; he observed some of his property in the trash bin and he observed a few items remaining in the apartment, some kitchen furniture and a microwave, which were never recovered by him. The plaintiff retrieved most of his property from the basement storage in his apartment building and from the trailer in Wolcott on April 23, 1997. That same day, the plaintiff filed a list of the items which he did not recover with the Bristol Police Department. By the time of trial, a few of those items had also been returned to him by the defendant, such as a kitchen table, some lamps and some clothing.
Among the items he did not recover were many of his tools, tv and stereo equipment, country western clothing, boots, cowboy hats and 200 country western CD's, and a collection of beer steins. In addition, other objects were missing such as dishes, an antique roll top desk and leather recliner and a Fire box which contained the title to plaintiff's car, his class ring and diploma.
Having considered the evidence parties concerning the extent of the loss sustained by the plaintiff caused by the improper actions of the defendant, the court finds that the plaintiff sustained damages in the amount of $11,082.00.
The plaintiff seeks an award of double damages as allowed under the provisions of General Statutes § 47a-46[10]. That statute provides
 The party aggrieved may recover in a civil action double damages and his costs against the defendant, if it is found on the trial of a complaint brought under section 47a-43 that he entered into the land, tenement or dwelling unit by force or after entry held the same by force or otherwise injured the party aggrieved in the manner described in section 47a-43.
CT Page 477
In Freeman v. Alamo Management Co., 221 Conn. 674 (1992), the Supreme Court held that double damages may be awarded where the illegal entry and detainer has been established by a fair preponderance of the evidence and where the court finds that such an award is appropriate. The facts in this case reveal a defendant who operates several residences which he leases to disabled persons, yet he acted without regard to his obligations as a landlord and without regard to the rights or interests of the plaintiff his tenant. This is the very action which §§47a-43 and 47a-46 were intended to prevent. Freeman v. AlamoManagement Co., Id. 684. It is the court's determination, after examining the facts of this case, that the defendant's acts come within the purview of General Statutes § 47a-46 in that the defendant injured the plaintiff by entering the dwelling unit and caused damage to, removal of and detention of various items of personal property of the plaintiff and that double damages are appropriate.
The plaintiff may therefore recover double damages in the sum of $22,164.00 and his costs against the defendant.
 THIRD COUNT: UNLAWFUL ENTRY
General Statutes 47a-16[11] prohibits entry by the landlord except in the instances specified by the statute:
 (d) A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises.
On the other hand, section 47a-16a requires the tenant to notify the landlord of any anticipated extended absence from the premises, and the landlord may thereafter enter during such prolonged absence to inspect, make repairs, supply services or show the premises.[12] Kalinowski makes much out of the fact that Forbotnick did not tell him of the planned trip to Florida. That is so. The tenant did not notify his landlord of his anticipated absence. He did, however, phone Kalinowski from Florida on March 30, 1997 about the Florida trip and the delayed return. Kalinowski denies having received such a call, but the evidence indicates the call was made to Kalinowski's telephone number in Wolcott, Connecticut on that date. Be that as it may, the most such notice of an anticipated extended absence would entitle CT Page 478 Kalinowski to is permit entry for the purposes stated in section47a-16a, not for purposes of locking the tenant out or removing his personal possessions.
The plaintiff also argues he could enter the apartment without consent because Forbotnick abandoned the premises. For the reasons discussed above, there was no abandonment. In the circumstances of this case any entry other than "in case of emergency" was unlawful. Kalinowski's entry to dispossess the plaintiff and to remove his belongings was prohibited under Section 47a-16 and entitles the plaintiff to relief under General Statutes 47a-18a[13] which provides in pertinent part, as follows:
 If the landlord makes an entry prohibited by section 47a-16
or . . ., the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. The tenant may also obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement
Our Supreme Court has perceived the disparity of power between landlords and tenants, and has recognized that the chances of deterring landlords' abases of power are materially increased by subjecting them to the payment of punitive damages.Freeman v. Alamo Management Co., supra, 683-84. The same reasoning holds true for the award of reasonable attorneys' fees. The facts found in this case show such an abuse of the power held by the defendant as landlord and directed toward the vulnerable, in this case the particularly vulnerable, plaintiff as tenant.
The plaintiff has been awarded his actual damage in count two. I find under the circumstances that it is appropriate to award reasonable attorneys' fees to plaintiffs counsel, Pepe Hazard, in the amount of $12,500.00. Benavides v. Benavides,11 Conn. App. 150, 154 (1987)
 COUNT FOUR: THEFT/CONVERSION
The plaintiff seeks treble damages pursuant to General Statutes § 52-564 which provides that "[a]ny person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages." Statutory theft under § 52-564 "is synonymous with larceny under General Statutes § 53a-119." Discover Leasing, Inc v. Murphy,33 Conn. App. 303, 309, (1993), citing Lauder v. Peck,11 Conn. App. 161, 165, 526 A.2d 539 (1987). Section 53a-119 provides, CT Page 479 "[a] person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner."
The plaintiff failed to sustain his burden to prove the essential elements of that statute, that is to prove that the defendant stole or knowingly received and concealed stolen property. The defendant acted in a misguided and precipitous, even reckless fashion in dealing with the plaintiff and the plaintiffs belongings, but I do not find that the defendant intended to steal that property. Accordingly, I find in favor of the defendant on the Fourth Count.
 FIFTH COUNT: UNFAIR TRADE PRACTICE
"Whether a practice is unfair and thus violates CUTPA is an issue of fact. "DeMotses v. Leonard Schwartz Nissan, Inc.22 Conn. App. 464, 466 (1990). Connecticut applies the so-called cigarette rule, which sets out the standard for a CUTPA violation: "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [(competitors or other businessmen)]." Williams Ford,Inc. v. Hartford Courant Co., 232 Conn. 559, 591-92X (1995). "`All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.'" Cheshire Mortgage Service,Inc. v. Montes, 223 Conn. 80, 106 (1992).
CUTPA violations are frequently found where liability is established in entry and detainer actions, Viera et al. v. Wirthet al., 12 CLT No. 45 (Nov. 17, 1986); John Hay BenevolentAssociation v. William Gelinas, 16 CLT (Jan. 8, 1990). The Connecticut Supreme Court has held that a CUTPA violation "certainly" can be found based on a violation of Connecticut General Statutes 47a-43(a), Daddona v. Liberty Mobile HomeSales, Inc., 209 Conn. 243 (1988).
The court finds, for the reasons discussed in counts two and CT Page 480 three, that the plaintiff is entitled to punitive damages and reasonable attorneys' fees as allowed under CUTPA; however, in light of the award of double damages in General Statutes § 47a-46 and reasonable attorneys' fees under General Statutes § 46-18a, any award here would be duplicative, so none is made.
 SIXTH COUNT: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SEVENTH COUNT: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
There is no doubt that the plaintiff suffered emotional distress when he was locked out of his apartment and found his possessions removed, some never to be recovered.
I do not find that emotional distress was intentionally inflicted, and so judgment may enter in favor of the defendant on the sixth count.
I do find that emotional distress was caused, at least in part, by the defendant's negligence. The plaintiff testified that he was hospitalized for two weeks, that he must take sleep medication, and that he is distrustful of others. No medical testimony was presented; no bills were submitted. There was evidence that the plaintiff had discontinued his medications when he went to Florida, had been taking sleep and anxiety medications and had been in counseling prior to the entry and detainer. Thus, there is uncertainty as to the degree to which the defendant's conduct caused or contributed to the plaintiffs distressed state after his return from Florida or how long he was so distressed. I have no doubt, however, that he suffered distress when he saw some belongings in the trash and others removed from his apartment or that he was further stressed by having to find a place to sleep and stay and by having to deal with the arrangements for locating and retrieving his property. Accordingly, while I do not find that all of the plaintiffs problems are attributable to the entry and detainer, it is reasonable to conclude that it would exacerbate the condition of this plaintiff, an individual already challenged by mental injury and impairment.
Accordingly, I find that judgment may enter in favor of Mr. Forbotnick on the seventh count and that he is entitled to damages in the amount of $3000.00.
 COUNTERCLAIM FOR BACK RENT AND FEES
CT Page 481
The plaintiff has asserted claims for back rent, storage fees, and additional service charges consisting of residential staffing dollars regarding the plaintiffs assistance and for counseling rendered to other persons residing in the plaintiffs building because of the plaintiff's visits to the premises after his return from Florida. The plaintiff concedes that he may owe some back rent but denies owing for storage fees and other service charges. The court agrees. The claim for storage fees in the amount of $400, given the finding that the plaintiff's was wrongfully dispossessed of the apartment and his belongings, is totally without merit and is wholy unsubstantiated.. The claim in the amount of $1000.00 for services rendered to the plaintiff for the period from December 1996 through April 1997 is also unavailing since the defendant's evidence was that the plaintiff whereabouts was unknown after February 12, 1997. The claim in the amount of $1620.00 for counseling services to other residents because of the disruption surrounding Mr. Forbotnick's unlawful dispossession is also without merit and only lends credence to the plaintiffs claim of emotional distress and his need for hospitalization as a result of the dispossession. Accordingly, the court finds in favor of the defendant on the counterclaim and sets off from the damages awarded herein the amount claimed of $2200.00.
 CONCLUSION
Judgment shall enter in favor of the plaintiff on the First, Second, Third, Fifth, and Seventh Counts of the complaint in the amount of $25,164.00. In addition, attorney's fees are awarded in the amount of $12,500 to be paid directly to the plaintiffs counsel, Pepe Hazard.
Judgment shall enter in favor of the defendant on the Fourth and Sixth Counts and on the counterclaim in the amount of $2000.00.
Therefore judgment is awarded for the plaintiff to recover of the defendant the sum of $37,664.00, including the attorneys' fees, plus taxable costs.
Tanzer, J.