[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application for a temporary injunction. The plaintiffs seek to bar any officer of the East Hartford Police Department, including those named as defendants, from doing the following:
 1. Arresting or threatening to arrest the plaintiff, Charles Burke, for criminal lockout, if he changes the lock on room #14, thereby denying the occupants access; and/or
 2. Arresting or threatening to arrest the plaintiff, Charles Burke, for larceny, if he removes and retains the personal property of the occupants of room #14. The plaintiffs claim that without the relief requested, Mr. Burke cannot
operate his rooming house and/or enforce the special agreements he had entered into with his `guests'.
The plaintiff, 18 Brewer Associates, L.L.C., operates a licensed rooming house in the town of East Hartford. The plaintiff, Charles Burke, owns the rooming house and makes the final decisions as to it's operations. Joseph Raimondo is the innkeeper, and he will inherit the rooming house after Mr. Burke's death. Mr. Raimondo's responsibilities include checking the building for damage, keeping it clean and renting the rooms. Those staying at the rooming house are referred to as guests.
On May 26, 2001, Mr. Raimondo rented room #14 to William Bridges. Mr. Bridges signed a thirty (30) day registration card and a four (4) page special agreement. Two (2) additional pages were attached, both with procedures dealing with late payments.[1]
CT Page 5523
The registration card required the listing of a permanent residence and included the statement that the "guest" does not intend to move from that residence. The special agreement includes a statement that occupying without permission would subject the "guest" to an arrest and prosecution for trespassing, and their personal property would be subject to a lien if the "guest" does not pay.
Mr. Bridges had signed the registration card, listed an address, and signed the special agreement. Mr. Bridges had also signed and initialed the two page attachment. Mr. Romaindo stated at the hearing that he had informed Mr. Bridges that his stay would be temporary, and Mr. Bridges responded that his stay would be short.
On July 27, 2001, Joe Raimondo notified Mr. Bridges that his occupancy had been terminated because he had "repeatedly violated the house rules, including causing disruption and disturbance of the peace and the enjoyment to other guests". Mr. Bridges had to vacate by July 8, 2001 or he could accept an increase from $100.00 to $120.00 plus ten dollars for each violation, for a total payment of $140.00 weekly.[2]
On July, 29, 2001 at 12:00 Mr. Bridges left the following note on his door: "Don't knock on this door before 10:00 am. If you do you will be ignored. Get caught trying to enter while I'm ignoring you will result in breaking and entering!!!"[3]
On July 29, 2001 at approximately 12:57 officer Zulick responded to a complaint from Mr. Raimondo.[4] Mr. Raimondo had summoned the police officer because the radio in room #14 was too loud. Mr. Raimondo, with the officer present, entered the room and turned the radio down. Mr. Bridges was not in the room. As the officer was leaving he saw Mr. Bridges outside, advised him about his radio too loud, and then left the premises. .
On July 29, 2001, at approximately 1:15 Mr. Raimondo found the following note from Mr. Bridges. "Don't knock before 10:00 a.m., or you will be ignored. Taking the notes doesn't bother me and to the one that keep's (sic) tearing it down and you now (sic) who I'm talking about get a life. Enter at your own risk of being arrested. All notes torn away have been copied."[5] Mr. Raimondo described the two notes from Mr. Bridges as threatening.
On July 30, 2001, Mr. Raimondo summoned officers from the East Hartford Police Department. The officers responded to a complaint concerning a trespasser and a disturbance. Once there, the officers requested assistance from a supervisor as Mr. Burke was there causing trouble. Sargeant Mormino arrived at the scene. On his arrival he noticed that CT Page 5524 Mr. Bridges had already been placed in the backseat of a cruiser. Mr. Bridges had been arrested and charged with breach of peace.
Mr. Raimondo had changed the locks while Mr. Bridges was out of the room. When Mr. Bridges returned and realized that he had been locked out he caused a disturbance. Mr. Raimondo informed Sargeant Mormino that he had locked out Mr. Bridges for non-payment of rent and he believed that he had a right to do so. However, Mr. Raimondo on July 27, 2001, had requested that Mr. Bridges leave because of disturbances, or stay and pay an increased amount. Mr. Raimondo believed that he could lock Mr. Bridges out because he had been there for sixty (60) days.
Mr Raimondo stated that Mr. Bridges had used a piece of asphalt to break the lock. Officer Mormino noticed the asphalt, but did not see a broken lock. Officer Syme, who had also been at the premises, stated that he saw the broken concrete on the floor but did not recall seeing any damage. Sargeant Mormino informed Mr. Raimondo that he had to replace the lock or he would be arrested for criminal lockout.
Ms. Lofgren shared room #14 with Mr. Bridges. When Sargeant Mormino arrived on July 30, 2001, he found Ms. Lofgren on the porch crying. She informed the officer that she had been staying in the room with Mr. Bridges and had been there for sixty days. She believed that she was on the lease. Ms. Lofgren had also been locked out and her possessions had been removed from the room.
Mr. Raimondo had called Mr. Burke, who arrived within eight (8) minutes. On Mr. Burke's arrival he informed Sargeant Mormino that he was going to lock Ms. Lofgren out and hold her possessions until she paid the $50.00 she owed. She was behind one day on her payments. No documentation was produced as to Ms. Lofgren's status and Mr. Raimondo had stated that she had not signed any special agreement. The special agreement specified no visitors allowed.[6]
Mr. Burke and Mr. Raimondo removed Ms. Lofgren's possessions from the room, took them to the office and locked the office. Ms. Lofgren's possessions included a safe, a television set, a hot place, a microwave oven and her clothing.
Sargeant Mormino ordered Mr. Burke to open the door and return Ms. Lofgren's property. Mr. Raimondo told Sargeant Mormino that he did not have keys to the room. Mr. Burke refused to comply with Sargeant Mormino's orders and he was placed under arrest for criminal lockout and larceny in the sixth degree.
Sargeant Mormino summoned the fire department. The department used a CT Page 5525 crow bar to force open the door to room #14.
The plaintiffs have alleged that on July 30, 2001, the department had a ninety day policy which determined whether an occupant was a tenant or a transient. The defendants have asserted that there was never a "ninety day policy." There is a no dispute that as of November 8, 2001, the police department now has a policy as to how officers should investigate and respond to a complaint of criminal lockout.
 DISCUSSION
The purpose of a temporary injunction is to preserve the status quo, until a final determination on the rights of the parties after a hearing on the merits. Clinton v. Middlesex Mutual Assurance Co.,37 Conn. App. 269, 270, (1995), Olcott v. Pendleton 128 Conn. 292, 295
(1941). The court may exercise its equitable powers and order a temporary injunction. In deciding whether to grant the extraordinary remedy of an injunction the court analyzes whether the moving party has met its burden of persuasion (1) that it lacks an adequate remedy at law, (2) would likely suffer irreparable harm, (3) that there is a foreseeable likelihood it would prevail at trial on the merits and (4) that the balance of equities favor an injunction. Advest, Inc. v. Wachtel,235 Conn. 559, 562-63 (1995); Waterbury Teachers Association v. Freedomof Information Commission, 230 Conn. 441, 446 (1994); Griffin Hospitalv. Commission on Hospitals and Health Care, 196 Conn. 451, 457-58(1985).
1. ADEQUATE REMEDY AT LAW
The plaintiffs have an adequate remedy at law.
"`Adequate remedy at law' means a remedy vested in the complaint to which he may, at all times, resort, at his own option, fully and freely, without let or hindrance," Stocker v. Waterbury, 154 Conn. 446, 449
[1967]. If the plaintiff's have an adequate remedy at law, then they are not entitled to an injunction. Id.
The plaintiffs have alleged the following: negligence, recklessness, trespass, intentional interference with contractual business relations, false imprisonment. conversion, theft, and state constitutional violations. Other than the request for injunctive relief the plaintiffs are seeking compensatory and punitive damages, costs and attorneys fees. Should the plaintiff prevail on the merits, money damages would therefore be an adequate legal remedy. Additionally, Mr. Burke may, at his own option, use summary process for eviction and permit the officers to investigate the circumstances. CT Page 5526
2. IRREPARABLE HARM
The plaintiffs have the burden of alleging and proving irreparable harm. Branch v. Occhionero, 239 Conn. 199, 207 (1996). The plaintiffs have alleged the following harm: (1) interference with the right to be free from unreasonable seizure, (2) the right to engage in interstate commerce and enter into contracts, (3) the right to engage in a business or profession, (4) the right to due process of law and (5) the right to equal protection.
The plaintiffs have asserted that Kinsella v. Jaekle, 192 Conn. 704,723 (1984) and Cologne v. West Farms Associates, 37 Conn. Sup. 90, 98
(Super 1982) (reversed on other grounds,) 197 Conn. 141 (1987) provide that when an alleged deprivation of a constitutional right is involved, no further showing of irreparable harm is necessary.
In Kinsella, the Court was confronted with the plaintiff's challenge to the constitutionality of an investigation to consider impeachment proceedings that a select committee of the House of Representatives was conducting The Court found that the plaintiff had not alleged the existence of such egregious and irreparable constitutional violations as would compel the Superior Court's intervention under its judicial power. The Court did not find that had such claims been made the plaintiff would not have to prove the claims.
In Cologne v. West Farms Associates Supra 98, the plaintiffs alleged irreparable harm. The harm claimed was the infringement of the plaintiff's constitutional rights of free speech and petition. The Court stated that such an infringement of lawful rights would per se constitute irreparable harm. The Court (Bieluch, J.) found after a hearing, that the plaintiffs had shown an infringement on the lawful right to free speech, and that infringement constituted irreparable harm.
The plaintiffs therefore must allege, and at a hearing, show that there is an infringement on a constitutional right and such infringement would be per se irreparable harm.
In support of his claim, Mr. Burke has alleged that C.G.S. § 53a-214
[criminal lockout] is unconstitutionally vague as it does not give fair warning, sufficient notice, and it fails to set minimum standards to govern enforcement. He has further alleged that it is unconstitutionally vague as applied to him. Mr. Burke has further alleged a denial of equal protection because the operators of other rooming houses or similar businesses are not threatened with arrest in the operation of their business. CT Page 5527
The plaintiff is engaged in the business of operating a rooming house. Several statutes and case law have a direct impact on how the plaintiff may operate his business but does not prevent him from operating his business.
These statutes include: 1. C.G.S. 47a-2 (a)[7] which permits an exemption to the use of summary process when there is transient occupancy; however, this exemption does not apply if the procedures have been created to avoid the application of summary process. 2. C.G.S.49-68[8] permits the keeper of a boarding or lodging house to keep the personal property of the occupant until any amounts owed are paid, and if not paid within sixty days to sell the property and apply the proceeds to satisfy the debt; 3. C.G.S. 53a-214[9] prohibits a landlord without a court order, from depriving a tenant of access to the dwelling unit or personal property; 4. C.G.S. 53a-119[10] prohibits any one from wrongfully taking or withholding property from the owner including C.G.S. 53a-119 (7)(A) which prohibits a transient guest at a rooming house from avoiding payment for services rendered.
The plaintiff asserts that he should not be subject to arrest if he changes the locks to room #14 and retains the property of any occupant of that room. The plaintiff states that he is acting lawfully because he operates a rooming house and has each "guest" sign a special agreement and the town has a ninety day policy. He believes those factors exempt him from summary process. (C.G.S. 47a-23 CT seq.) and Bourque v. Morris,190 Conn. 364, 460 A.2d 1251 (1983) upheld the finding by the Trial Court that the plaintiff was a transient occupant of the hotel, as that finding was adequately supported by the evidence. The issue as to whether the occupant is a transient or a tenant must be decided upon the basis of reasonable inferences to be drawn from the circumstances of the transaction. The Court in drawing on reasonable inferences look to the circumstances outlined in State v. Anonymous, 34 Conn. sup. 603, 605 (1977) those include the length of stay the existence of a special contract for the room, whether the person has another abode and the extent to which the person has made the room his or her home for the time being.
Mr. Burke holds fast to his belief that all of his guests are transient and he can lock them out and/or retain their property. Therefore, any arrest for such conduct would be an illegal arrest.
Whether any occupant of room #14 is a transient is determined on a case by case basis. The plaintiffs declaration of the status of the guests is not determined. CT Page 5528
C.G.S. 54-1F[11] authorizes an officer to make an arrest when the person is arrested in the act or on the speedy information of others. When an officer is dispatched to the premises either at the request of the plaintiff or the occupant of the room, that officer is required to investigate the complaint. The officer will then take the appropriate action, including making an arrest, if there is probable cause to do so.
The plaintiff is really asking the court to find that in every situation he is exempt from summary process and any arrest resulting from an investigation of a complaint of lockout is per se illegal.
This reasoning ignores the statutes and the analysis in Bourque. When there is a complaint about a lockout, trespass or seizure of property, the circumstances of the transaction between Mr. Burke and the occupant will determine whether the occupant is a transient.
Finally, the plaintiff made the assertion, but did not present any evidence, that any other owner of a rooming house or similar premises had a complaint of lockout or larceny investigated, and after a finding of probable cause, had not been arrested. In addition, the police department had investigated a previous complaint of lockout at the premises. After an investigation, the officers did not arrest Mr. Burke.[12]
The plaintiff has not proved the constitutional violations alleged. The plaintiff can continue to operate his business and enter into special agreements with his "guests". He can avail himself of summary process to evict a non paying occupant. The fact that the occupant may have an attorney who may raise the defense that Mr. Burke is exempt from the process does not preclude his use of the process. Furthermore, if the defense were successful, and the court found that the plaintiff was exempt in that case, then the plaintiff would have a court decision that he was exempt under the circumstances of that case.
The plaintiff may also follow the recommendations contained in the letter from Attorney Kelly[13] and return the personal property and/or have a police officer investigate his complaint.
As of November 8, 2001, the police department has a policy[14] for investigating complaints of criminal lockout. The policy also requires the officer to get an arrest warrant.
The plaintiffs have failed to prove by a preponderance of the evidence that his constitutional rights would be violated and without the injunction he would suffer irreparable harm.
3. LIKELIHOOD TO PREVAIL ON THE MERITS CT Page 5529
The plaintiff asserts that he is likely to prevail on the merits because he was arrested without a warrant; that the defendants ignored their written policy and that the Assistant State's Attorney nolled the larceny charge. The plaintiffs have also challenged the constitutionality of the statutes. "No matter how the constitutionality of a statute or regulation is raised, it is presumed to be valid and will be upheld unless the [complaining party] overcomes the presumption of validity and proves that the statute or regulation clearly violates constitutional principles" R. Fuller, 9 Connecticut Practice Series land lease and practice (1993) § 36-6 p. 631-32.
The burden of showing the unconstitutionality of a regulation (or statute) rests with the complaining party. Fels v. Zoning Commission3 Conn. App. 674, 681-82, 62 A.2d 625 (1993).
C.G.S. 54-1f permits an officer to make an arrest in their jurisdiction, without a warrant, when the person is arrested in the act or on the speedy information of others. In this case the officers responded to the rooming house when Mr. Raimondo the innkeeper called for their assistance. The officers made the arrest after evaluating the information provided and his observations of Mr. Burke's conduct in their presence.
The plaintiff offered C.G.S. 49-68, the town code, the zoning regulations and the "Ramirez memo" as evidence that they were exempt from summary process and that the department had a `ninety day' policy to determine whether an occupant was a transient or a tenant.
The plaintiff asserts that this policy was outlined in a memo from the town attorney to the former police chief and that they were following the policy. The memo from Attorney Ramierz, the town attorney, to the former Police Chief Shay, recommended that the officers be made aware of the legal rights of those who rent transient facilities and instructed as to those legal rights. The recommendation was an endorsement of the letter, which he attached, from Attorney Kelly, who had represented various hotel owners in the Hartford area. Attorney Kelly had interpreted Bourque v.Morris, supra as setting a three month stay as the line of demarcation for distinguishing between a transient and a permanent tenant. We now know that Bourque v. Morris did not set a line of demarcation but provided the framework for analyzing whether an occupant is a transient or a tenant. That analysis is conducted on a case by case basis, after an examination of the circumstances, and reasonable inferences drawn from those circumstances.
The letter, attached to the memo, also stated that C.G.S. 49-69 permits CT Page 5530 a hotel keeper to retain the personal property of an occupant until the bill is paid. Attorney Kelly further recommended that the personal property be returned to the occupant, and if the person becomes belligerent or violent, or attempts to do damage, to call the police and request an arrest for trespass, theft of services, breach of peace and or destruction of private property as applicable. The plaintiffs chose to apply one of the recommendations in the letter and ignored all the others.
The plaintiff in its brief further argues that the town had an `ad hoc' policy. First that it was ninety days and then arbitrarily changed to sixty days. Mr. Raimondo stated at the hearing, that more than two years prior to his testimony, the plaintiff's previous attorney had informed them that there was no "ninety day" rule. The plaintiffs are therefore aware that all of the occupants are not transients.
On July 30, 2001, the police department did not have a ninety day policy on criminal lockout. There was the `Ramierz memo'[15] which was in reality Attorney Kelly's analysis of Bourque, which Attorney Ramierz had recommended to the Chief of Police. There was also the memo from Attorney Jessie Bennet, Housing Court Prosecutor, [the Jessie Bennet memo][16] which addressed the issue of criminal lockout (C.G.S. 53a-214) and its application to landlord/tenant and transients. The memo contained her analysis of Bourque, fourteen factors to be considered to determine whether a tenant or a transient, and three Superior Court decisions.
In the three court decisions an occupant in a rooming house for two and a half (2 1/2) months was found not to be a transient; an occupant in a motor lodge for two months was found not to be a transient; an occupant at the YMCA for four months was found not to be a transient; and an occupant in a hotel for three months where the city was paying, was found to be a transient. [Bourque] the memo also recommended that the officer should get an arrest warrant.
On November 8, 2001 Commander Kenary, second in command at the police department issued a general order, signed off by the Chief, (defendant Mark Sirois) as to criminal lockout. He prepared that order after he became aware of the "90 day issue". He stated that the `90 day rule' in Attorney Kelly's letter was never adopted as department policy. Sargeant Mormino and patrol officer Stoldt both stated that the department did not have a 90 day policy. Officer Stoldt also stated that she believed case by case basis and that the Kelly letter had been circulated in the department but she didn't know who had circulated it. Officer Lynne one of the officers who responded on July 30, 2001, did believe there was a 90 day rule regarding transient and tenant but Sargeant Mormino stated that he was mistaken. Officer Lynne's belief does not establish that CT Page 5531 there was a ninety day policy.
The plaintiffs also argue that the special agreements permit them to retain personal property, although the letter from Attorney Kelly on which they relied recommended a different course of action. The plaintiff's registration card required the occupant to list a permanent address, and the special agreement contained a laundry list of all the circumstances that were considered and analyzed in previous cases to determine whether an occupant was a transient or a tenant.
The court looks beyond the plain language of a contract to the actual status in which the parties are placed. Latimer v. Administrator216 Conn. 237 252 (1990). The special agreements between the plaintiff and the occupants have previously been found to be designed to avoid the application of summary process.[17]
The evidence presented at the hearing showed that the length of stay for Mr. Bridges was sixty days and there was a special agreement with him but not with Ms. Lofgren. No evidence was presented as the extent the room had been made their home [except for an itemization of Ms. Lofgren's possessions] and whether there was actually another abode. All of the circumstances upon which reasonable inferences will be drawn, were not presented at the hearing.
The plaintiff claimed that the larceny count was nolled after a finding of insufficient evidence. However, no evidence was presented as to the reason for the nolle and prosecutors nolle cases for many different reasons.
When the defendant makes a substantial preliminary showing that a false statement knowingly, and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment, as incorporated in the Fourteenth Amendment requires that a hearing be held at the defendant's request. Frank v.Delaware, 438 U.S. 154 (1978).
Contrary to the claim by the plaintiff there has not been any previous finding in the previous criminal lockout case, that there was a reckless disregard for the truth for failure to disclose a 90 day safe harbor policy.
The defendant had a previous case in which he was charged with criminal lockout. At a pretrial on that case, the plaintiff had claimed that the police department had a policy that any occupant at the rooming house for less than ninety (90) days was a transient. The plaintiff offered the CT Page 5532 "Ramierz memo" as the policy and asserted that had that information [which he believed to be necessary to the finding of probable cause], been included in the application for the warrant, the warrant would not have been issued.
The Court found that the defendant in the criminal case (the plaintiff in this case) had made the requisite preliminary showing to be entitled to a hearing as he requested. The hearing would have afforded him the opportunity to establish, if he could, that the memo was policy, and if it were policy and ignored, the inclusion of that information would have been necessary to the finding of probable cause on the charge of criminal lockout. The plaintiff argues that he did not have a "Franks" hearing in that case, because the prosecutor nolled the case. Again, no evidence was presented as to the reason for the nolle.
In this case, the plaintiff had the opportunity to show that there was a ninety day policy. The plaintiff failed to meet his burden of proof that the "Ramierz memo', (Attorney Kelly's letter) was department policy.
In order to prevail on the merits, the plaintiff would have to show that the relevant statutes are unconstitutional and that his arrest was illegal. He would also have to show that he was treated differently from others who were similarly situated and that he has been prevented from conducting his business.
From the evidence presented the plaintiff is unlikely to prevail on the merits.
4. BALANCING OF THE EQUITIES
No court of equity should ever grant an injunction merely because of the fears of apprehensions of the party applying for it. Goodwin v. NewYork, N.H. and H.R. Co., 43 Conn. 494, 500 (1876); Ginsbert v. Mascia,149 Conn. 502, 505 (1962). In deciding whether to grant a temporary injunction, the Court balances the results which may be caused to one party or the other.
The plaintiff, Charles Burke, is asking the court to issue an order that precludes his arrest, and to find him exempt from summary process, no matter the facts or circumstances. The plaintiff has asserted that all of his `guests' are transients and therefore all of his actions are legal. He believes that any arrest for criminal lockout or larceny would therefore be illegal.
The plaintiff is free to operate his rooming house business and enter CT Page 5533 into contracts without the requested injunction. The plaintiff can also choose to follow all the recommendations in the "Ramierz memo" rather than engage in conduct which could result in his arrest. The plaintiff can also act pursuant to C.G.S. 47a-23. He cannot avoid having the court review the circumstances of all relationships between him and the occupants of room #14.
To grant an injunction in this case would prevent the officers of the East Hartford Police Department from engaging in legitimate law enforcement activity. Should the plaintiff request assistance from the police department, or an occupant make a complaint, the officers would respond and investigate in accordance with the policy in effect as of November 8, 2001. If they determine that there is probable cause to arrest the innkeeper or the plaintiff for criminal lockout based on the circumstances, the injunction would preclude an arrest.
The balancing of the equities does not favor the granting of an injunction.
 CONCLUSION
Generally, a temporary injunction will not issue unless "the evidence is clear and where no substantial doubt exists as to the plaintiff's rights to an injunction." Lekto Shave Corp. v. General Shaver Corp, 19F Supp. 843 (D. Conn. 1937). Based on the evidence presented and an assessment of the credibility of the witnesses the court finds that the plaintiff failed to meet the standard of proof as to the four part test for the issuance of an injunction.
The application for the temporary injunction is denied.
Crawford, J.