## BRIAN WASKO ET AL. *v.* JAMES MANELLA
### (AC 22286)

Bishop, McLachlan and Peters, Js.

Argued October 19, 2004—officially released February 15, 2005

*John C. Turner, Jr.,* for the appellant (defendant).

*Erik E. Roberts,* for the appellee (substitute plaintiff).

*Opinion*

McLACHLAN, J. This appeal is before us on remand from the Supreme Court. In *Wasko* v. *Manella,* 269 Conn. 527, 550, 849 A.2d 777 (2004), the Supreme Court reversed the decision of this court in *Wasko* v. *Manella,* 74 Conn. App. 32, 811 A.2d 727 (2002), with direction to consider the defendant's remaining claims on appeal. These claims are that the trial court (1) improperly precluded the plaintiff subrogor Brian Wasko from testifying as to his understanding of the scope of coverage of his homeowner's insurance policy and (2) improperly determined that the substitute plaintiff subrogee, Middlesex Mutual Assurance Company (Middlesex), had proved its claim for damages to recover proceeds paid to the subrogors for their property loss.[1] We reverse in part the judgment of the trial court.

---

[1] The subrogors, Brian Wasko and Phyllis Wasko, are no longer parties in interest to this action.

The facts relevant to our resolution of the remaining two claims are as follows.[2] In February, 1993, the defendant, James Manella, was staying as a social houseguest at a home owned by Brian Wasko and Phyllis Wasko when he negligently caused a fire that destroyed the dwelling and most of its contents. Pursuant to the terms of a homeowners insurance policy issued to the Waskos by Middlesex, Middlesex paid the Waskos $48,500 for the lost personal property and $84,005 for the lost dwelling for a total of $132,505. The policy provided for payment to the insureds of the replacement cost of a loss, but specified limits of $48,500 for the loss of the contents and $97,000 for the loss of the structure.

In October, 1993, the Waskos instituted an action against the defendant, sounding in negligence, recklessness and res ipsa loquitur. In March, 1997, pursuant to a subrogation clause in the insurance policy, Middlesex was substituted as plaintiff to recover the proceeds it paid to the Waskos.

In April, 2000, the defendant filed a motion for summary judgment as to all three claims, arguing that Middlesex had no right of subrogation because a social houseguest should be considered an implied coinsured under the policy. In October, 2000, the court granted summary judgment as to the recklessness and res ipsa loquitur counts, but denied summary judgment as to the negligence count. In allowing the negligence claim to proceed, the court held that Middlesex could subrogate the Waskos' claim because the homeowners policy at issue did not specify coverage for social guests.

A trial to the court was held on the negligence claim on July 24 and 25, 2001. The court determined that the defendant's negligence caused the fire and awarded

---

[2] A more thorough recitation of the facts can be found at *Wasko* v. *Manella*, supra, 269 Conn. 529–30.

Middlesex $132,505, which equalled the total amount paid to the Waskos. This appeal followed.

I

We first address the defendant's claim that the court improperly precluded Brian Wasko from testifying as to his understanding of the scope of coverage of his insurance policy. We disagree that it was improper for the court to preclude this testimony.

During cross-examination of Brian Wasko, the following colloquy occurred:

"[The Defendant's Counsel]: It was your understanding as [the defendant] went out there that your insurance would cover—cover him?

"[The Plaintiff's Counsel]: Objection. Irrelevant.

"The Court: Sustained.

"[The Defendant's Counsel]: Okay. Withdraw the question. Did you consider [the defendant] a guest?

"[The Witness]: [Y]es. A guest and a potential renter.

"[The Defendant's Counsel]: Okay. And, a potential renter. Well, are you—had you read your insurance policy? Had you ever read your insurance policy for this house?

"[The Witness]: I believe—

"[The Plaintiff's Counsel]: Objection. Relevance.

"The Court: Sustained.

"[The Defendant's Counsel]: Your Honor . . . my line of questioning is just to arrive at an understanding of what the owner felt his policy encompassed.

"[The Plaintiff's Counsel]: You know, I would just like to object to that. The whole issue has been addressed in the motion for summary judgment as to [the] status of

[the defendant] at the time of the use of the building. The only relevance would be toward that end. It's the law of the case. It has been ruled. As far as our right for subrogation, it has been ruled that we do have the right of subrogation, and the issue has been closed. So, I would object to any line of questioning in that regard.

\* \* \*

"The Court: I'm going to sustain the objection. There's nothing in this file with reference to any claim with reference to the policy."

The defendant argues that this line of questioning should have been permitted because Brian Wasko's understanding of whom his policy covered was relevant to the issue of whether the defendant was a coinsured under the policy. He asserts, therefore, that it was improper for the court to exclude as irrelevant this testimony.

"[T]he trial court's evidentiary rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did. . . .

"The law defining the relevance of evidence is . . . well settled. Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not prejudicial or merely cumulative." (Citations omitted; internal quotation marks omitted.) *Jewett* v. *Jewett*, 265 Conn. 669, 679–80, 830 A.2d 193 (2003).

We conclude that any testimony regarding Brian Wasko's expectations of coverage on the policy was irrelevant because the court previously had determined that the defendant was not a coinsured under the policy. In its memorandum of decision on the defendant's motion for summary judgment, the court concluded: "The Waskos' insurance policy provides in pertinent part: 'insured' means you and residents of your household who are: a. your relatives; or b. other persons under the age of twenty-one and in the care of any person named above. The defendant did not submit evidence showing that he falls into either of the above categories. . . . There is no dispute that the defendant was not a member of the Wasko family and was an unrelated social guest. Therefore, the defendant is not a coinsured under the Waskos' policy, and the insurance company is entitled to pursue its action again him."[3]

The plaintiff maintains that in precluding Brian Wasko's testimony, the court likely regarded its prior ruling on the issue of the scope of coverage of the policy as the law of the case. Underlying the law of the case doctrine is the view that "[a] judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). The doctrine provides that "[w]here a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Internal quotation marks omitted.) *Haggerty* v. *Williams*, 84 Conn. App. 675, 683, 855 A.2d 264 (2004).[4]

---

[3] We note that the Supreme Court has upheld the trial court's ruling that Middlesex had the right of subrogation. See *Wasko* v. *Manella*, supra, 269 Conn. 542–50.

[4] The denial of a motion for summary judgment is an interlocutory order. *Chadha* v. *Charlotte Hungerford Hospital*, 77 Conn. App. 104, 121, 822 A.2d 303, aff'd, 272 Conn. 776, 865 A.2d 1163 (2005).

It was within the court's discretion to treat its earlier decision in this matter as the law of the case, and it is reasonable to assume that the court did so here. The defendant failed to bring to the court's attention any new or overriding circumstance that would persuade the court that it should reconsider its earlier decision, and the court itself gave no indication that it felt compelled to revisit the issue. We accordingly conclude that the court reasonably could have relied on its prior determination regarding the scope of coverage of the insurance policy as the law of the case and, on that basis, properly precluded as irrelevant the testimony of Brian Wasko.

## II

We next consider the defendant's claim that the court improperly determined that Middlesex had proved its claim for damages with respect to both the loss of the dwelling and the loss of the contents. The defendant argues specifically that the court should have awarded only nominal damages to Middlesex because it did not adequately establish the actual value of the property at the time of loss. We conclude that there was sufficient evidence produced at trial on which the court reasonably could have based its award of damages for the loss of the dwelling, but that there was insufficient evidence produced as to the loss of the contents. We accordingly reverse the portion of the court's judgment pertaining to the loss of the contents.

"It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Although damages often are not susceptible of exact

pecuniary computation and must be left largely to the sound judgment of the trier . . . this situation does not invalidate a damage award as long as the evidence afforded a basis for a reasonable estimate by the [trier] of that amount. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 689–90, 697 A.2d 1137 (1997).

It is well settled that "[an] insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. The principle has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter." (Internal quotation marks omitted.) *Wilkinson* v. *Boats Unlimited, Inc.*, 236 Conn. 78, 88, 670 A.2d 1296 (1996). In short, "[a] subrogee can obtain no greater rights against a third person than its subrogor had." *Connecticut Savings Bank* v. *First National Bank & Trust Co.*, 138 Conn. 298, 305, 84 A.2d 267 (1951).

We first address the court's damage award with respect to the loss of the dwelling. Although there is no rigid methodology for calculating damages, such matters being left largely to the sound discretion of the trier, it has been recognized that a proper measure of damages for the total loss of a structure is the actual value of that structure at the time of its destruction. *Hubbard* v. *New York, New Haven & Hartford R. Co.*, 70 Conn. 563, 564, 40 A. 533 (1898); see *Charles* v. *Reuck*, 179 Cal. App. 2d 145, 147, 3 Cal. Rptr. 490 (1960). As this measure of damages represents the right of the

Waskos against the defendant, the principles of subrogation mandate that Middlesex, as subrogee, succeeded to no greater right. Such damages are recoverable, however, only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty.

At trial, a sworn statement of proof of loss was admitted into evidence. This document, signed by the Waskos, indicates the full replacement cost of the dwelling to be $97,844, and an "actual cash value" of the dwelling prior to loss to be $84,005—the difference being adjustments for depreciation and additional coverage for plants and fencing.[5] Further substantiating the veracity of this figure as the actual value of the dwelling at the time of the loss is that Middlesex in fact paid this amount to the Waskos, as evidenced by a photocopy of a check also admitted into evidence.[6] We accordingly conclude that there was sufficient evidence produced at trial on which the court reasonably could have based its award of damages for the loss of the dwelling.

We turn now to the damage award for the loss of the contents. After the fire, the Waskos compiled and submitted to Middlesex a list of the personal property destroyed and the replacement cost of each item. This list, admitted into evidence, showed a total loss of $62,994. In accordance with the policy limits specified in the insurance contract, Middlesex paid to the Waskos $48,500, which amount was later awarded to Middlesex in the subrogation action. The court appears to have

---

[5] Brian Wasko testified that the full replacement cost was arrived at by a building contractor's estimate to construct a replacement dwelling. It has been recognized that calculating replacement costs less depreciation is an acceptable way to measure damages in a fire loss case. See *Northrop* v. *Allstate Ins. Co.*, 247 Conn. 242, 245 n.3, 720 A.2d 879 (1998).

[6] The defendant did not object at trial to the introduction of the sworn statement of proof of loss, the photocopy of the check or Brian Wasko's testimony.

reasoned that because the policy at issue provided for replacement costs and Middlesex paid the claim in an amount based on the Waskos' representation of these costs, Middlesex should recover this amount from the defendant.

This reasoning misconceives the law of subrogation. Where total loss of personal property has occurred, damages are measured by the fair value of the property at the time that it was destroyed. See *Stoll* v. *Judd Co.*, 106 Conn. 551, 560, 138 A. 479 (1927). Therefore, the extent of the right of the Waskos as against the defendant is to recover the fair market value of the destroyed items. Notwithstanding that Middlesex paid to the insureds the replacement cost of the contents up to the policy limit, it can only succeed to the rights of the insureds, who are entitled to recover, at most, the fair market value of the contents at the time they were destroyed.

Introduced at trial was a nineteen page list compiled by the Waskos enumerating the contents of the house destroyed in the fire and the approximate replacement cost of each item. Brian Wasko testified at length regarding the list, explaining that he obtained replacement cost figures by contacting retailers, describing the destroyed item and requesting the price of a comparable item. He did not, however, offer any testimony about the value of the items at the time of the fire.

Middlesex nevertheless asserts in its brief that "there was much testimony regarding the valuation of the items by other methods in addition to replacement cost valuations. There was also additional testimony about the items themselves, the original cost of many of the items, the amount of use and age of the items." Middlesex, however, offers no support for this assertion in the way of transcript, exhibit or other record references.[7]

---

[7] Our reading of the transcripts reveals, quite to the contrary, that the list submitted into evidence consisted exclusively of replacement cost figures. Brian Wasko testified: "We were instructed to make a listing of the items,

We accordingly conclude that there was insufficient evidence produced at trial on which the court reasonably could have based its award of damages for the loss of the contents, which should have been valued at their fair value or actual value at the time of the loss. Therefore, the court's award was clearly erroneous.

The judgment is reversed only as to the award of damages for the loss of the contents and the case is remanded with direction to render judgment awarding nominal damages to Middlesex with respect to that loss.[8] The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

the manufacturer and what a replacement value would be, and where we got that quote from, that replacement value. So, that's the source, the store that, um, to verify what the price—replacement value was."

Later on in his testimony, he was again questioned about the figures provided to Middlesex. The following colloquy occurred:

"Q. Okay. So, all these figures, these are replacement costs?

"A. Yes. I didn't write that. Where it says cost. That's retail cost if you were to go to a store and buy that item. When we compiled the list—

"Q. Okay. So, none of these numbers would take into account, you know, any depreciation in the—

"A. No.

"Q. In the value?

"A. No. Those are all brand new prices. That's brand new retail price."

[8] Nominal damages are recoverable where there is a breach of a legal duty or the invasion of a legal right and no actual damages result or where, as here, such damages are not proven. See 22 Am. Jur. 2d, Damages § 15 (2003). To obtain an award of more than nominal damages, facts must exist that afford a basis for measuring the plaintiff's loss with reasonable certainty. The evidence must be such that the jury may find the amount of this loss by reasonable inferences from the facts established, not by conjecture, speculation and surmise. See id., § 14.

This court has previously declined to remand an action for a new trial for failure to award nominal damages on the basis that "[n]o purpose would be furthered by a remand because the damages to be awarded to the plaintiff against the defendants could only be nominal based upon the substantive findings of the trial court . . . . We will not ordinarily remand a case for the mere failure to award nominal damages. . . . Although appellate courts ordinarily will not remand a case for the failure to award nominal damages, they have not hesitated in such circumstances simply to direct the trial court to render judgment for the prevailing party for $1 in nominal damages." (Citations omitted; internal quotation marks omitted.) *McManus* v. *Roggi*,

78 Conn. App. 288, 304, 826 A.2d 1275 (2003); but see *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 78 n.12, 717 A.2d 724 (1998).