WARNING LIGHTS AND SCAFFOLD SERVICE, INC.
*v.* O AND G INDUSTRIES, INC.
(AC 27130)

Harper, Lavine and West, Js.

Argued March 22—officially released July 3, 2007

*Susan L. Miller*, with whom, on the brief, was *J. Scott Scherban*, for the appellant (plaintiff).

*Jeffrey A. Blueweiss*, with whom, on the brief, were *John P. Majewski* and *Joshua A. Yahwak*, for the appellee (defendant).

*Opinion*

HARPER, J. This appeal involves an action by the plaintiff, Warning Lights & Scaffold Service, Inc., against the defendant, O & G Industries, Inc., to recover damages for failure to pay the plaintiff's attorney's fees and costs in an earlier lawsuit. The trial court simultaneously rendered judgment of nonsuit and directed a verdict after concluding that the plaintiff had failed to establish a prima facie case for its breach of contract cause of action and failed to plead or prove its claim of equitable subrogation. On appeal, the plaintiff challenges the propriety of both of those rulings. We affirm the judgment of the trial court.

The following facts are relevant to the plaintiff's appeal. On October 22, 1996, the plaintiff rented a 1979 Ford L9000 truck from the defendant pursuant to a written agreement (rental agreement). Three days later, on October 25, 1996, the truck was involved in a motor vehicle accident in which four people were seriously injured. Following the accident, four personal injury lawsuits were instituted against the parties. All of the lawsuits were consolidated and eventually settled pursuant to an agreement involving a total payment of $4.35 million (underlying litigation).

Thereafter, in 2003, the plaintiff instituted this action against the defendant seeking compensation for its attorney's fees and costs in the underlying litigation. As amended, the complaint alleged that although the rental agreement obligated the defendant to pay those expenses, the defendant had repeatedly refused to do so. The complaint alleged further that the plaintiff had "incurred legal fees and expenses totaling $161,317.63 in defending itself in the [underlying] litigation." Accordingly, the plaintiff requested an award of $161,317.63 in damages, plus interest, costs and "any other relief that the court deems just and equitable."

A jury trial of the present action commenced on November 3, 2005. During its case-in-chief, the plaintiff presented evidence that the plaintiff's insurance carrier, Providence Washington Mutual Insurance Company (insurance company) had retained the law firm of Morrison Mahoney, LLP (law firm) to defend the plaintiff in the underlying litigation. The evidence also established, however, that all of the expenses associated with the law firm's defense of the plaintiff, including its attorney's fees, were paid by the insurance company. After the plaintiff closed its case-in-chief, the defendant moved for a directed verdict on the ground that the plaintiff had failed to prove that it personally sustained damages, as required to establish a prima facie case of breach of contract. After hearing argument from both parties, the court agreed with the defendant and concluded further that the plaintiff had not pleaded or proven that it was entitled to recover under a theory of equitable subrogation. As a result, the court granted the motion for a directed verdict and simultaneously rendered judgment of nonsuit against the plaintiff. This appeal followed.

At the outset, we set forth the standard by which we review a trial court's decision to direct a verdict and to render judgment of nonsuit. "Directed verdicts are not favored. . . . A trial court should direct a verdict only when a jury could not reasonably and legally have reached any other conclusion. . . . In reviewing the trial court's decision to direct a verdict in favor of a defendant we must consider the evidence in the light most favorable to the plaintiff." (Internal quotation marks omitted.) *Janusauskas* v. *Fichman*, 264 Conn. 796, 803, 826 A.2d 1066 (2003). With regard to judgments of nonsuit, General Statutes § 52-210 authorizes a court to grant such a motion if the plaintiff has failed to make out a prima facie case.[1] The rendering of a judgment

---

[1] General Statutes § 52-210 provides: "If, on the trial of any issue of fact in a civil action, the plaintiff has produced his evidence and rested his cause,

of nonsuit is proper "when the evidence, produced by the plaintiff, if fully believed, would not permit the trier in reason to find the essential issues on the complaint in favor of the plaintiff. . . . [Accordingly, when reviewing a court's decision to render a judgment of nonsuit] [t]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to him, and every reasonable inference is to be drawn in his favor." (Citation omitted; internal quotation marks omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 609–10, 440 A.2d 810 (1981).

I

We begin by addressing briefly the plaintiff's allegation that the court improperly directed a verdict and rendered judgment of nonsuit on the breach of contract claim. Specifically, the plaintiff challenges the court's conclusion that it offered no evidence to establish that it was damaged as a result of the alleged breach of contract. We agree with the court's conclusion.

It is well settled that in order to recover for breach of contract, a plaintiff must prove that he or she sustained damages as a direct and proximate result of the defendant's breach. See *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 503–504, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006). In this case, the plaintiff alleged in its complaint that it "incurred legal fees and expenses totaling $161,317.63 in defending itself in the [underlying] litigation." Yet, notwithstanding this allegation, the plaintiff did not present any evidence suggesting that it personally spent that amount, or any other amount, on its defense. Indeed, all of the evidence submitted at trial established that the plaintiff's insurance company

the defendant may move for judgment as in case of nonsuit, and the court may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case."

paid all of the plaintiff's legal fees and expenses in the underlying litigation. In light of this dearth of evidence establishing that the plaintiff spent any money in its defense, we conclude that the court properly directed a verdict and rendered judgment of nonsuit against the plaintiff on the breach of contract claim.

## II

We next address the plaintiff's claim that the court determined improperly that it failed to plead a cause of action for equitable subrogation or, in the alternative, failed to establish a prima facie case of equitable subrogation.

As our Supreme Court has explained, "[t]he right of [equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. . . . The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. . . . As now applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Citations omitted; internal quotation marks omitted.) *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, 236 Conn. 362, 371, 672 A.2d 939 (1996).

With these principles in mind, we first examine the allegations contained in the plaintiff's complaint to determine whether they stated a cause of action for equitable subrogation. In evaluating the sufficiency of the complaint, we are mindful that "[t]he interpretation of pleadings is always a question of law for the court

. . . ." (Internal quotation marks omitted.) *Geren* v. *Board of Education*, 36 Conn. App. 282, 290, 650 A.2d 616 (1994), cert. denied, 232 Conn. 907, 653 A.2d 194 (1995). Accordingly, our review is plenary, and we must determine whether it was " 'legally and logically correct' "; id.; for the court to have concluded that the plaintiff failed to state a claim for equitable subrogation.

Because equitable subrogation is, as the name implies, a cause of action sounding in equity, it must be pleaded in accordance with Practice Book § 10-27. Practice Book § 10-27 provides: "A party seeking equitable relief shall specifically demand it as such, unless the nature of the demand itself indicates that the relief sought is equitable relief." In this case, the complaint, as amended, did not state expressly a claimed entitlement to recovery under the theory of equitable subrogation. The complaint did allege, however, that the defendant breached its contractual duty to defend and indemnify the plaintiff in the underlying litigation, which caused the plaintiff to expend $161,317.63 in its defense.[2] On the basis of that allegation, the plaintiff

---

[2] Specifically, the relevant portion of the plaintiff's complaint contained the following allegations:

"4. The Rental Agreement provided that: Rentee [the defendant] shall defend, indemnify and hold harmless [the plaintiff] from and against any and all losses, liabilities, damages, injuries, claims, demands, costs and expenses, arising out of the use or possession of the [truck] including, but not limited to any and all fines, penalties, and forfeitures imposed under any [f]ederal, [s]tate, [m]unicipal, or other state law, ordinance, rule, regulation or insurance policy provision.

"5. Pursuant to the foregoing provision of the Rental Agreement and by correspondence to and filing of a cross-claim against [the] defendant in the litigation, [the] plaintiff demanded on numerous occasions that [the] defendant and its insurers assume [the] plaintiff's defense and the costs associated with that defense, and indemnify [the] plaintiff for any judgment obtained against [the] plaintiff, but [the] defendant has at all times refused such demands. . . .

"7. [The] [p]laintiff incurred legal fees and expenses totaling $161,317.63 in defending itself in the litigation.

"8. Pursuant to the terms of the Rental Agreement, [the] defendant is liable to [the] plaintiff in the amount of $161,317.63."

requested an award of $161,317.63 in damages, in addition to interest, costs and *any other relief that the court deems just and equitable.*" (Emphasis added.)

We conclude that the plaintiff's complaint sufficiently stated a cause of action for equitable subrogation so as to preclude a directed verdict or nonsuit on that ground. Notably, the plaintiff's prayer for relief requested an award of, inter alia, "any other relief that the court deems just and equitable." Because the complaint specifically requested that the court apply the principles of equity when fashioning a remedy, the plaintiff's complaint could be considered reasonably to encompass a claim of equitable subrogation. In that regard, this case is analogous to *Total Aircraft, LLC* v. *Nascimento*, 93 Conn. App. 576, 889 A.2d 950, cert. denied, 277 Conn. 928, 895 A.2d 800 (2006), in which this court concluded that a failure to plead, separately and specifically, a claim of quantum meruit did not preclude recovery under that theory. The plaintiff in that case requested generally from the court an award of "[s]uch other and further relief as may be deemed appropriate by the court." (Internal quotation marks omitted.) Id., 580. Although the prayer for relief did not specifically demand equitable relief as required by Practice Book § 10-27, this court nonetheless upheld the trial court's determination to permit recovery in quantum meruit. *Total Aircraft, LLC* v. *Nascimento*, supra, 581–82. In doing so, this court noted that "[w]here the nature of the case and the nature of the plaintiff's demand is such that equitable relief is clearly being sought, a specific demand for equitable relief in not necessary." (Internal quotation marks omitted.) Id., 582.

Furthermore, "[i]n Connecticut, we long have [rejected] the notion that pleadings should be read in a hypertechnical manner." (Internal quotation marks omitted.) *Deming* v. *Nationwide Mutual Ins. Co.*, 279

Conn. 745, 778, 905 A.2d 623 (2006). Instead, we "construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties. . . . As long as the pleadings provide sufficient notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Citations omitted; internal quotation marks omitted.) *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002). Here, the defendant has not claimed, and the record does not reflect, that it was surprised or prejudiced by the plaintiff's failure to allege expressly an entitlement to recovery through equitable subrogation.[3] As such, we conclude that the complaint stated a cognizable claim of equitable subrogation.

We next address whether the court properly determined, in the alternative, that the lack of evidence establishing that the plaintiff personally expended any money in its defense was fatal to its equitable subrogation claim. We conclude that the court's determination was proper for two reasons. First, in arguing that it is entitled to recover amounts paid by its insurance company on its behalf, the plaintiff appears to misunderstand the nature and purpose of equitable subrogation. A party advancing properly a claim of equitable subrogation is "stepping into the shoes of the party *it paid* in order to recover the *payments that it made* . . . ." (Emphasis added; internal quotation marks omitted.) *Wasko*

---

[3] Indeed, on the first day of trial, the defendant presented several arguments, with accompanying citations to cases, concerning the propriety and merits of an equitable subrogation claim in this case. It later briefed the issue extensively in its memorandum of law in support of its motion for a directed verdict.

v. *Manella*, 269 Conn. 527, 548, 849 A.2d 777 (2004). Accordingly, any equitable subrogation action against the defendant could have been brought only by the insurance company, because "[u]pon . . . payment, the insurer became subrogated to any rights that its insured might have had against the party who had caused the loss." Id.

Second, in a tort system that is primarily concerned with providing compensation, "[s]ubrogation has the objective of preventing [an] insured from recovering twice for one harm, as would be the case if he or she could recover from both the insurer and from a third person who caused the harm." 16 L. Ross & T. Segalla, Couch on Insurance (3d Ed. 2005) § 222:8. In accordance with that principle, the plaintiff could have sought compensation for the costs of its defense *either* from the defendant pursuant to the rental agreement or from its insurance company pursuant to its insurance policy. Having chosen the latter arrangement and having received the benefit of full indemnification by its insurance carrier, the plaintiff cannot now attempt to effectuate a double recovery by pursuing its original breach of contract claim against the defendant. Indeed, permitting the plaintiff to recover on behalf of its insurance company, and thereby to enrich itself unjustly, would be neither equitable nor consistent with the principles of subrogation.[4] See *Westchester Fire Ins. Co.* v. *Allstate Ins. Co.*, supra, 236 Conn. 371 n.7 (equitable subrogation "derives from the equitable principle against unjust enrichment").

We conclude, therefore, that the court properly directed a verdict in favor of the defendant and rendered

[4] In apparent recognition of this fact, on the second day of trial the plaintiff attempted to substitute the insurance company as the plaintiff in this action. The court denied both motions for substitution because the case had been pending for two and one-half years, and introducing the insurance company as a party might create a conflict of interest for one of the jury members.

judgment of nonsuit on the plaintiff's causes of action for breach of contract and equitable subrogation.

The judgment is affirmed.

In this opinion the other judges concurred.