## ALLSTATE INSURANCE COMPANY *v.* STEPHEN PALUMBO ET AL.
### (AC 28409)

DiPentima, Harper and Dupont, Js.

Argued November 27, 2007—officially released August 12, 2008

*Neil Johnson*, for the appellant (named defendant).

*Jeremiah J. O'Connor*, for the appellee (plaintiff).

*Opinion*

DUPONT, J . In this action for equitable subrogation, the defendant Stephen Palumbo[1] appeals from the judgment of the trial court, rendered after a trial to the

---

[1] The complaint named Rock-Vern Electric, Inc., as an additional defendant. On April 15, 2005, the plaintiff withdrew the complaint against Rock-

court, in favor of the plaintiff, Allstate Insurance Company. The defendant claims (1) that an equitable subrogation action brought by the plaintiff could not be maintained against him as the fiancee of the plaintiff's insured or as a cohabitant in the home of the plaintiff's insured and (2) that if the action was legally viable, the amount of the judgment was excessive and based on improperly admitted evidence.[2] We affirm the judgment of the trial court.

The following factual and procedural history is relevant to the issues raised. The trial court found that on January 31, 2002, Lisa Deveau was the owner of certain real property located at 26 Kathy Circle, Coventry. Deveau resided at the premises with her daughter and the defendant. The property was insured by the plaintiff under a homeowner's policy in which Deveau was the named insured. On January 31, 2002, the defendant, a licensed electrician, negligently installed a heat pump and water heating element at the premises, causing a fire that resulted in damage to the structure of the house as well as damage to personal property.

The defendant moved out of the premises in October, 2005. While the defendant resided on the premises, he and Deveau shared expenses, although they had no written or oral arrangement in this regard. The occupants shared the entire house, without any one of them having exclusive use of any particular area. The defendant performed many improvements and maintenance

Vern Electric, Inc., leaving Palumbo as the sole defendant. We, therefore, refer to him as the defendant in this opinion.

[2] Cases involving equitable subrogation usually involve both the initial question of a defendant's liability to a plaintiff, and, if liability exists, the monetary extent of a defendant's responsibility. See *Wesson, Inc.* v. *Hychko*, 205 Conn. 51, 60, 529 A.2d 714 (1987); see also *Wasko* v. *Manella*, 269 Conn. 527, 849 A.2d 777 (2004). Implicit in the remand in *Wasko* v. *Manella*, supra, 269 Conn. 550, is the right of the third party to question whether the evidence at trial was sufficient to establish the amount of the loss to the subrogors' structure and contents. In other words, the defendant can raise the issue of whether the insurer overpaid its insured.

items to the realty as though he were an owner, although he never claimed to own the real estate. The defendant conceded responsibility for the fire that damaged the premises.

The plaintiff, pursuant to its liability insurance policy, expended money as claimed by Deveau, its insured, for the repair of the realty and for the loss of personal property in the amount of $61,493.29. The plaintiff seeks reimbursement from the defendant because the plaintiff was "subrogated to any and all rights and claims which the insured had or has against the defendant to the extent of the payments made to [its] insured as a result of the fire caused by the [d]efendant's negligence."

The defendant, in his amended special defenses, claimed that (1) he was an insured person pursuant to Deveau's policy with the plaintiff and, therefore, was not subject to a negligence action by his insurance company, (2) he and Deveau, his fiancee, were in a landlord-tenant relationship, (3) he was a tenant, (4) he was a lodger and (5) subrogation was not equitable.

The court concluded that the defendant was not an insured under the language of the policy[3] and that there was no landlord-tenant relationship between Deveau and the defendant. The court, citing *Wasko* v. *Manella*, 269 Conn. 527, 849 A.2d 777 (2004), held that the plaintiff had a cause of action for equitable subrogation against the defendant, noting that "[j]ust as . . . Deveau could have brought an action in negligence against [the defendant], so, too, can [the plaintiff] by virtue of equitable subrogation." Accordingly, the court rendered judgment in favor of the plaintiff in the amount of $61,493.29.

---

[3] The persons specifically covered under the policy of insurance were the named insured or residents of the household if they were relatives or dependent persons in the care of the insured. The defendant conceded that he is not a dependent person in the care of the insured or the husband of the insured. He argued instead that he is a relative of the insured because he and she had planned to marry.

I

The defendant first argues that the court improperly concluded that the plaintiff was entitled to equitable subrogation. Specifically, the defendant argues that the plaintiff is not entitled to equitable subrogation because he was a tenant or a lodger and, under the facts of this case, subrogation would not be equitable. The defendant further argues that even if he is not a tenant within the strict confines of the term, he and Deveau were in a landlord-roomer or landlord-lodger-boarder relationship, which would also fall within the provisions of the landlord and tenant statutes. We disagree.

"As our Supreme Court has explained, [t]he right of [equitable] subrogation is not a matter of contract; it does not arise from any contractual relationship between the parties, but takes place as a matter of equity, with or without an agreement to that effect. . . . The object of [equitable] subrogation is the prevention of injustice. It is designed to promote and to accomplish justice, and is the mode which equity adopts to compel the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. . . . As now applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter." (Internal quotation marks omitted.) *Warning Lights & Scaffold Service, Inc.* v. *O & G Industries, Inc.*, 102 Conn. App. 267, 272, 925 A.2d 359 (2007). Equitable subrogation "derives from the equitable principle against unjust enrichment . . . ." (Internal quotation marks omitted.) Id., 276. "A claimant who has established an entitlement to restitution by proving the unjust enrichment of the defendant at the claimant's expense is ordinarily entitled to a personal money judgment against the defendant for the amount

of the enrichment in money." Restatement (Third), Restitution and Unjust Enrichment, c. 7, introductory note, p. 117 (Tentative Draft No. 5, March 12, 2007).

Briefly described, this subrogation action involves a paradigm of three participants, the plaintiff insurer, the insured, and a third person who, it is alleged by the insurer, has been unjustly enriched by the payment by the insurer of a claim covered by its contract with the insured that should have been borne by the defendant third person because of his negligence. "[S]ubrogation is a time-honored theory, and insurers who pay a loss are entitled, within the limit of subrogation doctrine, to pursue the actual wrongdoer." 16 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) § 222:4.

It is important to establish the relationship between the defendant and Deveau because if the defendant had no monetary obligation arising from that relationship, such as a contract as a boarder-lodger or tenant as he claimed, or arising from his tortious conduct, he would not be unjustly enriched by the plaintiff's payment to Deveau. It is the relationship between the insured and the third person that governs whether the insurer's payment to the insured unjustly benefited or enriched the third person because the duty owed by the third person to the insured establishes whether the former did or did not owe the latter the sum of money paid by the insurer to the insured. The duty owed is usually governed by the expectations of the parties, which may be outlined in an insurance policy or a lease. See *Hartford Fire Ins. Co.* v. *Warner*, 91 Conn. App. 685, 692, 881 A.2d 1065, cert. denied, 276 Conn. 919, 888 A.2d 88 (2005).

"The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of

[the trial court's] action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did. . . . When the trial court draws conclusions of law from its balancing of the equities, however, our review is plenary. . . . Moreover, we are mindful that [s]ubrogation is a highly favored doctrine . . . which courts should be inclined to extend rather than restrict." (Citations omitted; internal quotation marks omitted.) *Wasko v. Manella*, supra, 269 Conn. 542–43.[4]

Our Supreme Court previously has considered whether to allow an action for equitable subrogation by the insurer against an insured's tenant; see *DiLullo v. Joseph*, 259 Conn. 847, 792 A.2d 819 (2002); or against an insured's social houseguest.[5] See *Wasko v. Manella*, supra, 269 Conn. 527. In *DiLullo v. Joseph*, supra, 850–51, our Supreme Court held that "in the absence of an express agreement between the parties covering the question, there is no right of subrogation on the part of a landlord's fire insurer against a tenant of the landlord's premises." The court subsequently held, in *Wasko v. Manella*, supra, 527, that a right of subrogation exists when a social houseguest negligently causes a fire that damages a host's insured property. It is the defendant's contention that he and Deveau had a landlord-tenant relationship, causing subrogation to be inequitable and barred as a matter of law. See *DiLullo v. Joseph*, supra, 850–51. He further contends that the court improperly found that he was more akin to a social houseguest

---

[4] Insurer subrogation, however, is not universally accepted, and there is considerable disagreement among commentators on the wisdom of insurer subrogation. 16 L. Russ & T. Segalla, supra, § 222:4.

[5] In *Wasko v. Manella*, supra, 269 Conn. 529, the plaintiffs, the insured homeowners, brought an action against the defendant houseguest, and the plaintiffs' insurer was substituted as the real party in interest. In *DiLullo v. Joseph*, supra, 259 Conn. 848, the plaintiffs were the insured property owners and their insurer, Public Service Mutual Insurance Company.

subject to subrogation pursuant to *Wasko* v. *Manella*, supra, 527.[6]

"A landlord-tenant relationship, in its most common and traditional form, is one in which there is an oral or written rental agreement between the parties containing the terms and conditions for the use and occupancy of the subject dwelling unit." *Rivera* v. *Santiago*, 4 Conn. App. 608, 609, 495 A.2d 1122 (1985). A "landlord" is defined in General Statutes § 47a-1 (d) as "the owner, lessor or sublessor of the dwelling unit, the building of which it is a part or the premises." A "tenant" means "the lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit or premises to the exclusion of others or as is otherwise defined by law." General Statutes § 47a-1 (*l*). A "rental agreement" means "all agreements, written or oral . . . embodying the terms and conditions concerning the use and occupancy of a dwelling unit or premises." General Statutes § 47a-1 (i). "Rent" is defined as "all periodic payments to be made to the landlord under the rental agreement." General Statutes § 47a-1 (h). Applying these definitions to the present case, we conclude that the court properly found, on the basis of the evidence admitted at trial, that the defendant and Deveau were not in a landlord-tenant relationship.

Specifically, the court found that the defendant moved into the premises in or about February, 2001, as Deveau's "live-in boyfriend-fiance" and vacated the premises in or about October, 2005. During this period

---

[6] The court did not explicitly find that the defendant was a social houseguest but impliedly found that he was a social guest by stating: "A guest, as distinguished from a boarder, is bound for no stipulated time." The court noted that the analysis utilized in *Wasko* v. *Manella*, supra, 269 Conn. 527, determined that "a social houseguest who negligently caused a fire was liable to the insurer which paid the claim for the insured loss." The court concluded that because a social houseguest in a personal residence was not immune from liability, judgment should enter in favor of the plaintiff against the defendant.

of time, Deveau and the defendant shared expenses for the residence. The defendant never made a security deposit and did not have either a written or oral lease with Deveau. They shared the expenses of the home, which varied from month to month. Deveau, the defendant and Deveau's daughter occupied the entire house, and no one had exclusive use of one particular area. The court rejected the defendant's contention that by virtue of their having resided together for five and one-half years and by virtue of their sharing of expenses, a landlord-tenant relationship was created between Deveau and the defendant. The court stated that "[b]y his own admission, [the defendant] conceded that he did not occupy any part of the premises to the exclusion of others, nor did he have a fixed amount of rent or a fixed period of occupancy. Based on this testimony, the court must conclude that it was never intended by the parties, either expressly or impliedly, that a landlord-tenant relationship would arise." On the basis of our review of the record, we conclude that the court properly held that a landlord-tenant relationship did not exist between Deveau and the defendant.

The defendant further argues that even if he was not a tenant within the strict confines of the statute, he was in a landlord-roomer[7] or landlord-lodger-boarder[8] relationship with Deveau, subjecting him to the landlord-tenant laws, including the right of eviction through summary process. According to the defendant, these

[7] A "roomer" is "a person occupying a dwelling unit, which unit does not include a refrigerator, stove, kitchen sink, toilet and shower or bathtub and one or more of these facilities are used in common by other occupants in the structure." General Statutes § 47a-1 (j).

[8] "Ordinarily the landlord furnishes the lodger with a furnished room or rooms, whose care the landlord has, and whose habitation and enjoyment he gives to the lodger, while he himself retains the occupation. The tenant has the exclusive possession of his rooms, while the lodger has merely the use without the actual or exclusive possession, which remain in the lessor." *Mathews* v. *Livingston*, 86 Conn. 263, 267, 85 A. 529 (1912).

relationships turn on whether the roomer or lodger-boarder is transient. If that person is transient, i.e., a guest, that person would be excluded from the landlord-tenant laws. If, however, that person is determined not to be transient, the roomer or lodger-boarder would be a tenant " 'as otherwise described by law'," according to the defendant.

We conclude, contrary to the defendant's contention, that the court properly found, by implication, that the defendant was a social guest rather than a roomer or lodger-boarder. In determining whether the defendant was a guest rather than a roomer or lodger-boarder, "[t]he length of stay, the existence of a special contract for the room, the fact that a person has another abode and the extent to which he has made the room his home for the time being" may be considered. (Internal quotation marks omitted.) *Bourque* v. *Morris*, 190 Conn. 364, 369, 460 A.2d 1251 (1983). These are all "material circumstances in determining whether the relationship is that of a guest or a lodger." (Internal quotation marks omitted.) Id. On the basis of our review of the record, we cannot say that the court's factual determination that the defendant was more akin to a social guest than a roomer or lodger-boarder was clearly erroneous. We recognize that the difficulty of determining the status of the defendant arises from the fact that the defendant was more than a social guest because he contributed to the expenses of the realty but less than a tenant because he paid no fixed amount as rent, had no fixed period of occupancy and was transient because the landowner could terminate his stay at any time by terminating their relationship.

In *Wasko* v. *Manella*, supra, 269 Conn. 546, the court stated that "[i]f the insured property owner can bring an action to recover for negligently caused damages against the defendant, we see no reason why an insurer that pays for the property owner's loss cannot also

bring an action against the defendant." We also note that "[i]t is well settled that [an] insurer can take nothing by subrogation but the rights of the insured, and is subrogated to only such rights as the insured possesses. The principle has been frequently expressed in the form that the rights of the insurer against the wrongdoer cannot rise higher than the rights of the insured against such wrongdoer, since the insurer as subrogee, in contemplation of law, stands in the place of the insured and succeeds to whatever rights he may have in the matter. . . . In short, [a] subrogee can obtain no greater rights against a third person than its subrogor had." (Citation omitted; internal quotation marks omitted.) *Wasko* v. *Manella,* 87 Conn. App. 390, 397, 865 A.2d 1223 (2005). On the basis of the foregoing, the court here properly held that just as Deveau could have brought an action in negligence against the defendant, so, too, can the plaintiff by virtue of equitable subrogation.

This case is but an extension of *Wasko* v. *Manella,* supra, 269 Conn. 527. The defendant was more like a social houseguest of the insured because he could remain as an occupant of the insured's home for only as long as she chose to allow him to do so and because he had few characteristics of a tenant. Whether he remained for one weekend or many weeks, the parties' relationship did not become a business relationship or legal agreement. In an equitable subrogation action, the equities are balanced by the court. When the court draws conclusions of law to reach its conclusion as to whether the plaintiff is entitled to that remedy, our review is plenary. See id., 543. We conclude, on the basis of our plenary review, that the court properly found, by implication, that the defendant was a social guest of the insured and that the plaintiff was entitled

to judgment in its favor in this equitable subrogation action.[9]

## II

The defendant next argues that the court improperly determined the amount of damages owed to the plaintiff. Specifically, the defendant contends that even if it is assumed that an action for equitable subrogation lies, the plaintiff did not meet its burden of proving either structural damage or personal property damage. We disagree.

"It is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of the plaintiff's proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Although damages often are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier . . . this situation does not invalidate a damage award as long as the evidence afforded a basis for a reasonable estimate by the [trier] of that amount. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Wasko* v. *Manella*, supra, 87 Conn. App. 396–97.

[9] We are aware that the insurer, in recovering from the defendant the amount it paid to Deveau, will retain the premium paid by her for the insurance coverage although it will not have sustained a monetary loss arising from the insurance coverage. The premium, in essence, was a prepayment by Deveau for the risk or possibility of loss to be borne by the insurer, which loss will not now materialize, to the extent it will be paid by the defendant. The defendant, however, has made no argument or claim for a credit in the amount of the insurance premium in the event of a judgment against him in the amount paid by the plaintiff to Deveau pursuant to the insurance policy. We need not determine, therefore, whether the defendant is entitled to such a credit.

The defendant first argues that the plaintiff did not meet its burden of proving structural damage. In support of his argument, the defendant contends that the contract between the contractor, Connecticut Restoration Specialists, and Deveau, for structural repairs to the residence, did not comply with General Statutes § 20-429 of the Home Improvement Act, General Statutes § 20-418 et seq. Because the contract was unenforceable against Deveau, the defendant argues that it is unenforceable against him as well.

The defendant, however, did not raise this issue in his answer or by way of a special defense. It was briefly raised during the testimony of the plaintiff's expert witness and in the defendant's closing argument. The court did not address this issue in its memorandum of decision, nor did the defendant seek an articulation as to this issue. There is, therefore, an insufficient record to review the defendant's claim that the court improperly awarded damages for structural damage to the plaintiff due to noncompliance with the Home Improvement Act. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 52, 717 A.2d 77 (1998).

With regard to the items of personal property that were considered a total loss, the defendant argues that the court improperly calculated the loss using replacement cost and that no evidence was submitted as to the fair market value of the property. We disagree.

"Where total loss of personal property has occurred, damages are measured by the fair value of the property at the time that it was destroyed." *Wasko* v. *Manella*, supra, 87 Conn. App. 399. Stated another way, the loss of the contents should be "valued at their fair value or actual value at the time of the loss." Id., 400. We conclude, on the basis of our review of the record, that

the evidence was sufficient to support the court's award of damages for loss of personal property.

The plaintiff provided evidence through exhibits and testimony as to the actual value of the destroyed items. The plaintiff's exhibit eighty-eight shows how each destroyed item of personal property was valued at its actual cash value on the day of the fire. Mary Anne Brown, senior staff claims adjuster for the plaintiff, testified as to the process she followed to value the items that were destroyed. The plaintiff met its burden of proving damages as to the destroyed items of personal property.

With regard to items that were not considered a total loss, the plaintiff produced evidence that the property was cleaned or repaired and evidence of that cost. The defendant argues, however, that the plaintiff produced no evidence as to the fair market value of each of the repaired or cleaned items to substantiate that the cost of repairs was less than the value of the items. We conclude that the evidence was sufficient to support the judgment of the trial court with regard to the items of personal property that were cleaned or repaired.

With regard to real property, our Supreme Court has stated that "[t]he basic measure of damages for injury to real property is the resultant diminution in its value. . . . There is, however, a well established exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 59, citing *Whitman Hotel Corp.* v. *Elliot & Watrous Engineering Co.*, 137 Conn. 562, 573,

79 A.2d 591 (1951). "The permissive language of *Whitman Hotel* [*Corp.*] clearly leaves the selection of the repair measure in the trial court's discretion, limited only by the two attached provisos . . . . The cost of repairs, therefore, is a proxy for diminution in value caused by damage to the property. Because these are, in effect, alternative measures of damages, the plaintiff need not introduce evidence of both diminution in value and cost of repairs." (Citation omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 59–60.

The plaintiff in *Willow Springs Condominium Assn., Inc.*, introduced evidence of the cost of repairs of certain chimneys, decks and vents at issue. Id., 60. Our Supreme Court stated that "[a]lthough it would have been proper, in light of the value enhancement limitation articulated in *Whitman Hotel Corp.*, for the trial court to have refused to allow the jury to consider as a measure of diminution in value the plaintiff's proffered evidence of repair costs in excess of the purchase price of the property being repaired . . . this is not the situation in the case before us. There is no indication that the cost of repairing the chimneys, decks and vents would exceed the purchase price of the property being repaired." (Citations omitted; internal quotation marks omitted.) Id. Similarly, there is no indication in the present case that the cost of repairing the items of personal property that were not considered a total loss would enhance the value of the property over what it was before it was damaged.

The court in *Willow Springs Condominium Assn., Inc.*, continued by noting that the cost of repairs is evidence of the diminution in value resulting from the defendant's conduct. Id., 60–61; see also *Calderwood* v. *Bender*, 189 Conn. 580, 584–85, 457 A.2d 313 (1983) (actual cost of repairing faulty septic system, as

reflected in repair bill, was proper measure of damages resulting from defendant's negligence); *Whitman Hotel Corp.* v. *Elliot & Watrous Engineering Co.*, supra, 137 Conn. 573 ("[a]nd when the property injured may be repaired, if the repairs will substantially restore the property to its former condition, the cost of such repairs will ordinarily furnish proper proof of the loss" [internal quotation marks omitted]). Applying these principles to the present case, the plaintiff presented sufficient evidence to establish the cost to clean or repair those items of personal property that were not considered a total loss.

Jill Bisson, a subrogation advocate for the plaintiff, and Brown, testified regarding the items of personal property belonging to the insured that were cleaned or repaired. Specifically, the evidence indicated that the plaintiff paid $7350.94 to Bill's Cleaning Service for cleaning services it performed at the insured's residence. The evidence further indicated that the plaintiff paid $6260.01 to Mercury Cleaners of Hartford, Inc., for the dry cleaning of the clothing and soft goods that were in the residence and $1503 to Video Experts for repairing electronics after the fire. The documentation reflecting payment to each of these vendors was admitted into evidence without objection.

"Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate." (Internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 59. As stated earlier in this opinion, "[t]he determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous." (Internal quotation marks omitted.) *Wasko* v. *Manella*, supra, 87 Conn. App. 397. We conclude, on the basis of our review of the record, that the court's determination regarding

the amount of damages owed to the plaintiff is supported by the evidence in the record and is not clearly erroneous.

## III

The defendant next claims that the court improperly admitted computer generated evidence in support of damages. The defendant does not refer to any specific item of evidence that he finds objectionable; he appears, rather, to be making a general challenge to the computer programs used to assist the plaintiff's expert, James Quinn, in arriving at his structural damage estimate, and Brown in arriving at her personal property estimate. The defendant claims that this evidence failed to meet the standards for reliability set forth in *State* v. *Swinton*, 268 Conn. 781, 847 A.2d 921 (2004). We disagree.

"The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Fillion* v. *Hannon*, 106 Conn. App. 745, 756, 943 A.2d 528 (2008).

"[R]eliability must be the watchword in determining the admissibility of computer generated evidence [and] in order to lay a proper foundation for computer generated evidence, there must be testimony by a person with some degree of computer expertise, who has sufficient knowledge to be examined and cross-examined about the functioning of the computer. . . . In addition to the reliability of the evidence itself, what must be established is the reliability of the procedures involved, as

defense counsel must have the opportunity to cross-examine the witness as to the methods used." (Citations omitted; internal quotation marks omitted.) *State* v. *Swinton*, supra, 268 Conn. 812–13. "Because computer records are part of ordinary business activities, created for business rather than for litigation purposes, they carry with them the assurance of regularity that is a large element in establishing their trustworthiness." *American Oil Co.* v. *Valenti*, 179 Conn. 349, 357, 426 A.2d 305 (1979).

Quinn prepared an estimate regarding structural damage and testified as to the value of the structural damage. Brown created a list of the items of personal property that had been destroyed in the fire. Brown testified about the process she followed to value the items that were destroyed. A computer program assisted Quinn regarding the structural damage estimate and assisted Brown regarding the typewritten list that she prepared. The evidence was properly authenticated and testified about by both Quinn and Brown. On the basis of our review of the record, we conclude that the court did not abuse its discretion in its evidentiary rulings.

IV

The defendant's final claim is that the court improperly failed to preclude expert testimony that was disclosed to the defendant on the eve of trial. We disagree.

Practice Book § 13-4 (4) provides in relevant part that "any plaintiff expecting to call an expert witness at trial shall disclose the name of that expert, the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, to all other parties within a reasonable time prior to trial. Each defendant shall disclose the names of his or her experts in like manner within a reasonable time

from the date the plaintiff discloses experts, or, if the plaintiff fails to disclose experts, within a reasonable time prior to trial. If disclosure of the name of any expert expected to testify at trial is not made in accordance with this subdivision, or if an expert witness who is expected to testify is retained or specially employed after a reasonable time prior to trial, such expert shall not testify if, upon motion to preclude such testimony, the judicial authority determines that the late disclosure (A) will cause undue prejudice to the moving party; or (B) will cause undue interference with the orderly progress of trial in the case; or (C) involved bad faith delay of disclosure by the disclosing party. . . ."

The defendant argues that he has been substantially prejudiced by the disclosure, yet he presented no evidence of such prejudice at the time the motion to preclude was argued, and he has not cited any prejudice in the present appeal. The defendant also claims that he had no time to "thoroughly investigate those opinions or to obtain experts of his own in rebuttal to the plaintiff's experts' opinions." Yet, the defendant requested no additional time to secure rebuttal experts. Accordingly, we find that the ruling of the court allowing the plaintiff's experts to testify was within its broad discretion.

The judgment is affirmed.

In this opinion the other judges concurred.